UNITED STATES *v.* BRUCE DUNCAN CO., INC., A/C KASUGA SALES, LTD., NATIONAL SILVER COMPANY (No. 5115)*

---

*C.A.D. 817.

44

United States Court of Customs and Patent Appeals, March 20, 1963

*John W. Douglas*, Acting Assistant Attorney General, *Alan S. Rosenthal, David J. McCarthy, Jr.*, for the United States.

*Stein and Shostak* (*Majorie M. Shostak*, of counsel), for appellees.

[Oral argument February 4, 1963, by Mr. McCarthy, Jr., and Miss Shostak]

Before RICH, Acting Chief Judge, SMITH, and ALMOND, Jr., Associate Judges

SMITH, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the Customs Court, Third Division (C.D. 2339), which sustained the importer's protest against the collector's classification of "decorated porcelain snack sets".

The imported "snack sets" consist of plates of various shapes and standard tea cups. Each plate has a circular recess or well near its rim on one side for the purpose of holding a cup and preventing it from sliding off the plate. Some of the plates are shaped to provide indentations in their rims giving the plate a scallop-shaped appearance. It was stated by the importer's witnesses that these indentations facilitate carrying the plates.

The single pertinent paragraph of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the GATT, T.D. 53865, is as follows:

| Tariff Act of 1930 paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 212 | China, porcelain, and other vitrified wares, including chemical stoneware * * * all the foregoing, whether plain white, painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for: | |
| | *Tableware, kitchenware, and table and kitchen utensils, not containing 25 per centum or more of calcined bone:* | |
| * | * * * * | * * |
| | *Other than hotel or restaurant ware or utensils:* | |
| | Plates, not over 6⅝ inches in diameter and valued over 90 cents but not over $2.55 per dozen, or * * * | |
| | cups, valued over $1.35 but not over $4.45 per dozen; | |
| | saucers, valued over 90 cents but not over $1.90 per dozen; and | |
| | articles which are not plates, cups, or saucers and which are valued over $4.50 but not over $11.50 per dozen articles: | |
| | all the foregoing_____ | 10¢ per doz. pieces and 60% ad val. |
| | Plates of the diameters specified heretofore in this item, cups, saucers, and articles other than plates, cups, and saucers; each of the foregoing which is valued at not more than the minimum value specified heretofore in this item in respect of the like article. | 10¢ per doz. separate pieces and 45% ad val. |
| * | * * * * | * * |
| | *Articles which are not tableware, kitchenware, table or kitchen utensils, or chemical stoneware, and which do not contain 25 per centum or more of calcined bone.* [Emphasis added.] | 45% ad val. |

The collector classified the imported merchandise as "tableware" under the first emphasized portion of paragraph 212 above and assessed a duty at 60 *per centum* or 45 *per centum ad valorem* and 10 cents per dozen pieces. The importer, in its protest, asserted, *inter*

*alia*, that the "snack sets" were not tableware and therefore were properly dutiable as "articles which are not tableware" at 45 *per centum ad valorem* only under the second emphasized portion of paragraph 212 quoted above. The Customs Court, in passing on the protest, stated the issue to be simply whether the imported "snack sets" are "tableware" within the meaning of paragraph 212, *supra*. After hearing the testimony of two witnesses for the importer and viewing four exhibits of the imported merchandise, the court below held that the "snack sets" are not "tableware" as provided in paragraph 212, *supra*, and sustained the importer's protest, Judge Donlon dissenting. The sole issue to be decided on appeal is whether the court below was correct in so holding.

The term "tableware" as used in paragraph 212, *supra*, has been treated in prior cases as a "use" provision. See *United States* v. *The Baltimore & Ohio R.R. Co.*, A/c *United Glass and China Company*, 47 CCPA 1, C.A.D. 719, and *United States* v. *Butler Bros.*, 33 CCPA 22, C.A.D. 310. ▮ Chief use is to be determined as of the date of importation of the merchandise in issue. *Wilbur-Ellis Co., et al.* v. *United States*, 18 CCPA 472, T.D. 44762.

▮ It is a fundamental proposition so well established as not to require the citation of authorities that the burden of proving chief use of the imported merchandise is on the importer who protests the classification of the collector. We agree with the statement in the majority opinion of the Customs Court that:

▮ In determining chief use, it is proper to consider not only the testimony offered, but the characteristics of the merchandise itself. *United States* v. *Colibri Lighters* (U.S.A.) *Inc.*, 47 C.C.P.A. (Customs) 106, C.A.D. 739. ▮ Such use may be shown either by the character of the article itself, provided it is evidence *per se* of its intended use, or it may be shown by proof that such article is intended and serviceable substantially for the purpose declared by the statute. *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T.D. 33873. ▮ The presumption of correctness attaching to the collector's classification may be overcome by the probative effect of the samples themselves. *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T.D. 41461; *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995.

Whether or not chief use has been properly established depends upon the issues and the evidence in each case. *United States* v. *F. W. Woolworth Co.*, 23 C.C.P.A. (Customs) 98, T.D. 47765. There, the court stated (p. 100):

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

Resolution of the issue here, therefore, turns upon whether the testimony and samples of the merchandise are sufficient to show that

the snack sets are not "tableware". The majority opinion below held that they are not.

The testimony of the witnesses and the imported merchandise itself presented on behalf of the importer seem to us to fairly establish that the imported "snack sets" were designed for serving light refreshments (such as cake and coffee or ice cream and tea) as distinguished from the serving of a traditional meal. It was asserted by the witnesses that the plates or trays are too small to be used as regular dinner plates, that they were designed to be held in the hands or on the lap of the user when having a light snack, and that they are advertised in the trade as "TV snack sets".

The majority below held that testimony of the importer's two witnesses, plus the characteristics of the merchandise itself, indicated that the chief use of the snack sets is "Not in the service of meals at the table but in the service of light refreshment away from the table where the dishes must be held in the hand or on the lap." Relying on the case of *United States* v. *Butler Bros.*, *supra*, the majority concluded that "tableware", as used in paragraph 212, was intended by Congress to mean only articles chiefly used upon a table for the service of meals and that, therefore, the imported "snack sets" are not "tableware".

We do not think this position is warranted by this court's decision in *United States* v. *Butler Bros.*, *supra*. There the imported merchandise was china bonbon or candy dishes having a wicker or bamboo handle. After quoting a number of dictionary definitions of the word "tableware", the court stated:

> We think it is evident from the dictionary definitions of the term "tableware" that in using that term in paragraph 212, *supra*, the *Congress intended to provide for only such articles as are chiefly used upon a table for the service of meals, and that it was not intended to cover novelty articles,* such as the involved bonbon and candy dishes, *which are not chiefly used in the service of meals but, according to the testimony of record, are used* on bridge tables and occasional tables for serving candy, nuts, etc., *after a meal.* [Emphasis added.]

We note also that, in stating the finding of the lower court that the bonbon or candy dishes were not tableware, the court emphasized the fact that the lower court found that "*the chief use thereof is for after meal service at bridge tables, parties, etc.*"

In the recent case of *U.S.* v. *Baltimore and Ohio R.R. Co.*, supra, we held that "after dinner cups and saucers" were not properly classified as "tableware". In that appeal, the preponderance of evidence supported the importer's contention "that the subject importation is of a class whose chief use is as ornamental or decorative ware rather than 'tableware,' * * *." This case lends no support to the importer's

position because in the present appeal, there is no assertion by the importer that the chief use of the "snack sets" is as ornamental or decorative ware.

We think the imported "snack sets", while admittedly unlike the conventional table service probably found in most homes when the word "tableware" was first put in paragraph 212,[1] should be considered to be "tableware" in the sense the word is used in paragraph 212 as amended and as determined by the evidence of chief use thereof as of the time of its importation. The "snack sets" here in issue are *per se* sufficiently distinct in purpose and intended use from the bonbon or candy dishes which were held not to be "tableware" in the *Butler Bros.* case as to render that decision readily distinguishable. An important factor in the *Butler Bros.* case was the fact there established that bonbon dishes were chiefly used after a meal. Such is not necessarily the case with "snack sets".

One of the dictionary definitions of tableware quoted in the *Butler Bros.* case is as follows:

*Tableware.* Ware for the service of the table; *a collective term for the articles which are used at meals, as dishes, plates, knives, forks, etc.* [Emphasis added.]

What is a meal?[2] As pointed out by Judge Donlon's dissent, a meal is defined "as the portion of food taken at a particular time to satisfy the appetite." We further agree with Judge Donlon who then states:

* * * I am not convinced by anything here of record that a portion of food which includes sandwiches, ice cream, cake and coffee, possibly a salad, or some combination thereof, is not a portion of food satisfying appetite at the time, in the ordinary meaning.

While it can be reasoned that because the imported merchandise can be used in the service of a meal, that "tableware" by the above quoted definition includes articles used at meals, and so, therefore, "snack sets" are "tableware", it is our opinion that there is another reason which supports our conclusion in the present case that the imported merchandise is "tableware" as the term is used in paragraph 212, *supra*.

Tariff acts are passed for the future as well as the present. *Newman* v. *Arthur*, 109 U.S. 132. It is a matter of common knowledge which we judicially note that the more formal customs of dining which prevailed on the date of the enactment of the Tariff Act of 1930, have given way to more informal and less rigid practices of modern living. Thus, it is now common practice to eat "snacks" as well as more complete meals from counters, coffee tables, and snack or "T.V.

---

[1] "Tableware" was first included in a proposed Senate amendment to H.R. 2667, 72 Congressional Record 5791 (1930). This amendment was accepted by the House after further amendment. See House Conference Report No. 1326 of April 28, 1930, pages 9, 43. Paragraph 212 of the 1922 Act had no provision for "tableware".

[2] What is a "snack"? "* * * A slight, hasty repast. Dial. & Colloq. * * *" Webster's New International Dictionary, 1930. We also note that Webster's Third New International Dictionary, 1961, lists "snack", "snack bar" and "snack table".

tables" as well as the more conventional dining on tables of an earlier day. No longer are our meals identified with a traditional "table" in a traditional kitchen or dining room. They are as likely to be served in a living room or on a porch and the "ware" used therewith placed on whatever object is readily available for the purpose. The advent of television as a central household attraction (unfortunate as this may be) has helped create new eating habits complete with "unquiet meals".[3] While such changes in eating habits can not properly be said to have been contemplated by the drafters of the 1930 Tariff Act, it seems to us the clear intent of the act was that "tableware", i.e., "ware" then used in the service of "meals" at a table, is properly descriptive of the present uses of "ware" such as the imported "snack sets." Such sets are particularly convenient for carrying a light snack from a point of service, such as the kitchen, to wherever the desired eating place happens to be. We do not agree with the contention of the importer that the trays or plates of the snack sets are so particularly designed as to be suited to be held only in the user's hand or user's lap and would not be used as "ware" in serving a "meal" at a table. The imported snack sets, in usage, could indeed be held by the user, but so can conventional items of "tableware". In both instances, however, it is likely that they would more conveniently be placed on a small coffee table, card table, snack counter, snack table or a "T.V. table".

Our conclusion on the present record is, therefore, that the imported merchandise was properly classified by the collector as "tableware" under paragraph 212, *supra.*

For the foregoing reasons, the judgment of the Customs Court is *reversed.*

---

[3] Which brings to mind the timelessness of Shakespeare's warning that "Unquiet meals make ill digestions." (The Comedy of Errors, Act V.)

