**SPORTS GRAPHICS, INC.,**
Plaintiff–Appellee,

v.

**The UNITED STATES, Defendant–Appellant.**

No. 93–1140.

United States Court of Appeals,
Federal Circuit.

May 12, 1994.

Ralph H. Sheppard, Adduci, Mastriani, Schaumberg & Schill, New York City, argued for plaintiff-appellee. With him on the brief, was Lisa Levaggi Borter.

Nancy M. Frieden, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellant. With her on the brief, were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge,

Intern. Trade Field Office. Also on the brief, was Arlene Klolkzo, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, of counsel.

Before RICH, PLAGER, and RADER, Circuit Judges.

RICH, Circuit Judge.

The United States appeals the decision of the Court of International Trade reversing a classification of goods under the Tariff Schedule of the United States (TSUS) by the Customs Service (Customs) in *Sports Graphics, Inc. v. United States*, 806 F.Supp. 268 (Ct.Int'l Trade 1992). For the reasons set forth below, we affirm.

## BACKGROUND

The merchandise at issue consists of soft-sided so-called "Chill" coolers imported from Taiwan by Sports Graphics during the period from 1986 through 1988. "Chill" coolers in various sizes were imported. All of the "Chill" coolers have the following characteristics: an outer shell of a vinyl-coated nylon material; an insulating core of approximately ½ inch thick polymer-based closed cell foam; a top secured by a zippered interlocking flap; an inner liner of vinyl; a handle or shoulder strap of nylon webbing and plastic fixtures as a means of carrying the merchandise; and exterior pockets secured by VELCRO or zippered closures. The merchandise at issue is used to store food and is designed to be carried.

Customs classified the merchandise under the luggage provision, item 706.62, TSUS, at a rate of 20% *ad valorem*. Sports Graphics protested this classification pursuant to 19 USC 1514(a). The protest was denied. Schedule 7, Part 1, Subpart D:

Sports Graphics subsequently brought an action in the United States Court of International Trade contesting the denial of its protest. 28 USC 1581(a) (1988). Sports Graphics contended that the imported soft-sided coolers were properly classifiable as "[a]rticles chiefly used for preparing, serving, or storing food or beverages . . ." under item 772.15 (or 772.16), TSUS, at a rate of 4 or 3.4% *ad valorem*.[1]

The trial court held that Customs improperly classified the merchandise under item 706.62, TSUS, and that the correct classification of the merchandise is item 772.15 (or 772.16), TSUS. The United States now appeals from the judgment of the trial court. We have jurisdiction under 28 USC 1295(a)(5) (1988).

## DISCUSSION

The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law which we review *de novo*. *W.R. Filbin & Co., Inc. v. United States*, 945 F.2d 390, 392 (Fed.Cir.1991). Resolution of that issue entails a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error. *Stewart–Warner Corp. v. United States*, 748 F.2d 663, 664–65, 3 Fed.Cir. (T) 20, 22 (Fed.Cir.1984).

The following are the competing provisions of the Tariff Schedule:

Headnote:

2. For the purpose of the tariff schedules—
   (a) the term *"luggage"* covers—

   (i) travel goods, such as trunks, hand trunks, lockers, valises, satchels, suitcases, wardrobe cases, overnight bags, pullman bags, gladstone bags, traveling bags, knapsacks, kitbags, haversacks, duffel bags, and like articles designed to contain clothing or other personal effects during travel; and

1. In the 1988 TSUS, item 772.15 was changed to 772.16 and the duty rate changed from 4 percent to 3.4 percent *ad valorem*. The language in both items remained the same.

(ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, gun cases, occupational luggage cases (physician, sample, etc.), and like containers and cases designed to be carried with the person, except handbags as defined herein ...

Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:

Of reinforced or laminated plastics:

Of other material:

Other:

706.62               Other ...................................... 20% <u>ad val.</u>

Schedule 7, Part 12, Subpart C:

Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specifically provided for; all of the foregoing of rubber or plastic:

772.15 (772.16)        Other ...................................... 4%   (3.4%)
                                                       ad val.

### Ejusdem Generis

Appellant argues that the trial court erroneously held that the merchandise at issue is of a class or kind of merchandise with a different purpose than articles in the luggage provision. Rather, appellant claims that the merchandise at issue is *ejusdem generis* with the exemplars listed in headnotes 2(a)(i) and 2(a)(ii) of the luggage classification. This is because, according to appellant, the storage capability of the merchandise is integral to classification of that merchandise under the luggage provision.

■■■ Under the rule of *ejusdem generis*, which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. *DRI Indus., Inc. v. United States*, 11 Ct.Int'l Trade 97, 102, 657 F.Supp. 528, 532, *aff'd*, 832 F.2d 155 (Fed.Cir.1987). As applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms. *Nissho–Iwai Am. Corp. v. United States*, 10 Ct.Int'l Trade 154, 157, 641 F.Supp. 808, 810 (1986).

The trial court found that the merchandise at issue is of a class or kind with a different purpose than the articles in the luggage provision. According to the trial court, the purpose of the merchandise at issue is to store food or beverage articles in a cold environment for a period of time.

In reaching this conclusion, the trial court distinguished *Prepac, Inc. v. United States*, 78 Cust.Ct. 108, 433 F.Supp. 339 (1977) and *Aladdin Int'l Corp. v. United States*, 13 Ct. Int'l Trade 1038, 1989 WL 156861, 1989 Ct. Int'l Trade LEXIS 392 (1989).

The *Prepac* court held that the insulated picnic bags with handles and zippered enclosures there were properly classified under the luggage provision because the merchandise was found to be "used for the convenience of the user while traveling [which included] carrying food in an automobile or for picnic purposes." *Prepac*, 78 Cust.Ct. at 111, 433 F.Supp. at 341. The trial court distinguished *Prepac* on the basis that classification under item 772.15, TSUS, was not addressed in that case as it was not presented to the court as an alternative classification. Therefore, the chief use of the merchandise in *Prepac* was not addressed as required in an analysis under item 772.15 (or 772.16), TSUS.

The *Aladdin* case addressed classification of an imported plastic lunch box and beverage flask. The *Aladdin* court concluded that the beverage flask was properly classified under item 772.15 and that the lunch box was properly classified under item 706.62, relying on *Prepac*. The trial court held that the *Aladdin* court was mistaken as to the law with regard to its classification of the lunch boxes. The trial court emphasized that in *Aladdin* the court's analysis focussed on the chief use of the article, which parallels the language of 772.15, and not on the *ejusdem generis* analysis required for classification under 706.62. In so focussing on the chief use, the *Aladdin* court should have classified the lunch box under item 772.15 (or 772.16), TSUS.

The trial court concluded that when determining the classification of the merchandise at issue here, under a proper analysis, the focus should be on whether food or beverage is involved. We agree. In focussing on whether food or beverage is involved, it is clear that the merchandise has a different purpose, the storage of food or beverage, which precludes the merchandise from being *ejusdem generis* with the exemplars listed in headnotes 2(a)(i) and 2(a)(ii) of the luggage provision.

Additionally, while the luggage provision mentions bottle, dining, and drinking fittings, such fittings are used to carry containers, such as plates or cups, and not food or beverages. In contrast, item 772.15 (or 772.-16), TSUS, specifically requires that the merchandise be chiefly used in the preparation, service or storage of food or beverages. Accordingly, the focus is correctly on whether the merchandise at issue is properly classified under the chief use provision of 772.15 (or 772.16), TSUS.

*Chief Use*

When making classification decisions under chief use provisions, such as item 772.15 (or 772.16), TSUS, the General Interpretative Rules of the Tariff Schedule provide that:

10. *General Interpretative Rules.* For the purposes of these schedules—

.   .   .   .   .

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by chief use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of the importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any).

■ Chief use is a question of fact, reversible only where the findings of the lower court are clearly contrary to the weight of the evidence. *Western Stamping Corp. v. United States,* 57 CCPA 6, 417 F.2d 316 (1969).

■ The trial court held that the chief use of the merchandise at issue was to maintain food and beverages at a desired temperature over a period of time, a storage function. We agree and note that the evidence relied on by the trial court, including the testimony of three employees of Sports Graphics, a merchandise manager for the Price Company, and a National Import Specialist, supports the trial court's determination as to the chief use of the merchandise.[2]

Appellant argues that the transportation or portability function of the merchandise is an essential characteristic thereby precluding the trial court's finding that the chief use of the merchandise is to store food. Appellant further contends that the storing and serving functions of the merchandise do not occur unless the merchandise is first transported. Appellant's argument, however, misses the mark. While it is not disputed that the merchandise is portable, that feature is clearly dependent upon the storage of food; when in normal use, one would not transport the merchandise without having first filled it

---

2. Appellant contends that the trial court improperly relied on two unpublished Customs ruling letters in determining the classification of the merchandise at issue, contrary to 19 CFR 177.-9(a), (b), and (c). We disagree because while the ruling letters can be considered by the trial court, they clearly did not form the basis of the trial court's decision. Moreover, even if the ruling letters were disregarded, the trial court's chief use determination is not clearly erroneous.

with food or beverage, not the other way around.

Therefore, as correctly found by the trial court, the focus is properly on whether food and beverages are involved. Under such an analysis, the use of the merchandise which exceeds all others is the storage of food or beverage. The merchandise was therefore properly classified under item 772.15 (or 772.16), TSUS.

*Rule of Relative Specificity*

■ Appellant contends that, because both items 706.62 and 772.15 (or 772.16), TSUS, describe the merchandise at issue, the rule of relative specificity must be invoked. That rule requires that goods be classified under the provision that most specifically describes it. *United States v. Simon Saw & Steel Co.*, 51 CCPA 33, 39 C.A.D. 834, 1964 WL 8553 (1964). According to appellant, item 706.62, TSUS more specifically describes the merchandise.

■ The trial court held that the rule of relative specificity did not apply here because the merchandise at issue is not susceptible of classification under both provisions. For the reasons set forth above, we agree with this holding. However, we additionally note that even if the merchandise at issue was properly classifiable under both provisions, the merchandise is correctly classified under item 772.15 (or 772.16), TSUS, a chief use provision, and not item 706.62, TSUS, an *eo nomine* provision, because a product described by both a use provision and an *eo nomine* provision is generally more specifically provided for under the use provision. *E.M. Chemicals v. United States*, 920 F.2d 910, 915–16, 9 Fed.Cir. (T) 33, 40–41 (Fed.Cir. 1990), *citing, United States v. Siemens America, Inc.*, 653 F.2d 471, 478 (CCPA 1981).

## CONCLUSION

Appellant has not identified any reversible error committed by the trial court in holding that the imported coolers are classifiable under item 772.15 (or 772.16), TSUS. The judgment of the Court of International Trade is therefore affirmed.

***AFFIRMED.***