INTERNATIONAL HOME TEXTILE, INC., PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Court No. 94–06–00347

(Dated March 18, 1997)

*Peter S. Herrick* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Bruce N. Stratvert), Sheryl A. French,* Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for defendant.

## MEMORANDUM OPINION

DICARLO, *Senior Judge:* Plaintiff, International Home Textile, Inc., challenges the United States Customs Service's classification of imported garments under subheading 6103.42.10 of the Harmonized Tariff Schedule of the United States (HTSUS) for cotton pants and shorts and under subheading 6105.10.00 for cotton tops. HTSUS, § XI, ch. 61, subheadings 6103.42.10, 6105.10.00 (1993). Customs' classification levies general Most Favored Nation (MFN) tariff rates of 17.1% *ad valorem* for the pants and shorts and 21% *ad valorem* for the shirts. *Id.* Plaintiff claims the garments' proper classification is as sleepwear under subheading 6107.91.00 at 9.3% *ad valorem* or, alternatively, under subheading 6107.21.00 at 9.5% *ad valorem. Id.* at subheadings 6107.91.00, 6107.21.00 (1993 & Supp. I). Plaintiff timely filed a protest against the liquidation of the merchandise. Upon denial of the protest, plaintiff timely instituted this action. Jurisdiction is proper under 28 U.S.C. § 1581(a) (1994).

## BACKGROUND

This dispute concerns the proper classification of imported garments consisting of a top, pants, and shorts made of lightweight 100% knit cotton. The garments are loose fitting, with or without a fly and side seam pockets, and have elastic waistbands for the pants and shorts, and ribbed cuffs at the wrist and ankles.

Customs classified the garments as "[t]rousers, breeches and shorts" of cotton under subheading 6013.42.10 of the HTSUS, and as "[m]en's or boys' shirts, knitted or crocheted: of cotton" under subheading 6105.10.00 of the HTSUS. HTSUS, § XI, ch. 61, subheadings 6013.42.10, 6105.10.00.

International Home Textile disputes Customs' classification, claiming the merchandise is properly classified as "[m]en's or boys' underpants, briefs, nightshirts, pajamas, bathrobes, dressing gowns and *similar articles*, knitted or crocheted," either under subheading 6107.91.00 ("other: of cotton") or, alternatively, under subheading

6107.21.00 ("nightshirts and pajamas: of cotton"). *Id.* at subheadings 6107.91.00, 6107.21.00 (emphasis added).

The parties have stipulated that the garments are properly considered loungewear, primarily used inside the home and around the house. The court furthermore found during trial that the garments are primarily for lounging and not for sleeping. (Ct. Ex. 1 at ¶¶ 1–2.)

## DISCUSSION

This case is before the court after trial *de novo* pursuant to 28 U.S.C. § 2640(a)(1) (1994). The court makes its determinations "upon the basis of the record made before the court[.]" *Id.* By legislative mandate, the court may not decide the case simply by dismissing the importer's alternative as incorrect. 28 U.S.C. § 2643(b) (1994). It must reach the correct result by considering "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984); *Amity Leather Co. v. United States*, 20 CIT 1049, 1052, 939 F. Supp. 891, 894 (1996).

Classification issues are resolved through "a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed. Cir. 1994). The first step is a question of law; the second, a question of fact. *Id.; Medline Industries, Inc. v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995); *Amity Leather*, 20 CIT at 1052, 939 F. Supp. at 894; *Anval Nyby Powder AB v. United States*, 20 CIT 608, 611, 927 F. Supp. 463, 466–67 (1996). Plaintiff bears the burden of proving that Customs' determination is incorrect. 28 U.S.C. § 2639(a)(1) (1994).

In this case, the court must first analyze the scope of the term "similar articles" in HTSUS subheadings 6107.91.00 and 6107.21.00. Next, the court must determine whether "loungewear" comes within the description of items listed under subheadings 6107.91.00 and 6107.21.00, or rather comes within the description of items listed under subheadings 6103.42.10 and 6105.10.00. In the second step, plaintiff must overcome the statutory presumption of correctness that operates in favor of Customs' factual determinations. 28 U.S.C. § 2639(a)(1) (1994) (describing presumption); *see Goodman Mfg., L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995) (limiting presumption to factual determinations); *see also IKO Industries, Ltd. v. United States*, 105 F.3d 624, 626 (Fed. Cir. 1997) (citing *Goodman*).

Plaintiff argues that the garments, as "similar articles" under subheading 6107.91.00, or alternatively under 6107.21.00, are *ejusdem generis* ("of the same kind") with the named exemplars, such as nightshirts, pajamas, bathrobes, and dressing gowns, of heading 6107, HTSUS. (Pl.'s Post Trial Br. at 4.) For this to be so, the garments need to possess the essential purpose or characteristic of the named articles of

heading 6107, HTSUS. *See Sports Graphics, Inc.*, 24 F.3d. at 1392. Plaintiff contends that their essential characteristic is that they are "worn next to the body * * * worn as sleepwear[,] and * * * worn in and around the home." (Pl.'s Post Trial Br. at 5.)

The court disagrees that the loungewear in question is, applying the rule of *ejusdem generis*, properly classified under either subheading 6107.91.00 or 6107.21.00 as a "similar article" to the named exemplars. In contrast to plaintiff's contention, not all of the exemplars are worn next to the skin (for instance, bathrobes are frequently worn over pajamas); not all of the exemplars are worn as sleepwear (for example, bathrobes or dressing gowns are worn before or after sleeping); and not all exemplars are meant to be worn only in and around the home (for example, briefs and underwear, when worn under outerwear garments, are worn outside the home). Rather, the court finds these items are characterized by a sense of privateness (underpants and briefs) or private activity (sleeping, bathing, and dressing).

Based upon a careful examination of the loungewear as well as the testimony of the various witnesses, the court finds that the loungewear items at issue do not share that essential character of privateness or private activity. As the parties have already stipulated, the loungewear is used primarily for lounging and not for sleeping. The court finds no basis in the exhibits, the witness testimony, or the loungewear's construction and design to find that it is inappropriate, at a minimum, for the loungewear to be worn at informal social occasions in and around the home, and for other individual, non-private activities in and around the house—*e.g.*, watching movies at home with guests, barbequing at a backyard gathering, doing outside home and yard maintenance work, washing the car, walking the dog, and the like. The court finds plaintiff's proposed classification heading does not encompass the loungewear in question.

The court finds that Customs' classification under HTSUS subheadings 6103.42.10 (knit cotton shorts and trousers) and 6105.10.00 (knit cotton shirts) does encompass the loungewear in question. Plaintiff concedes that the "loungewear, which includes tops, pants and shorts may also be described as shirts, trousers and shorts." (Pl.'s Post Trial Br. at 5.) Examination of the articles themselves further lead the court to find that plaintiff has not overcome Customs' presumption of correctness and that Customs' classification is appropriate. *See Mast Industries, Inc. v. United States*, 9 CIT 549, 552 (1985), *aff'd*, 786 F.2d 1144 (Fed. Cir. 1986) (explaining "[t]he former Court of Customs and Patent Appeals held that the merchandise itself may be strong evidence of use.") The Explanatory Notes to Chapter 61, HTSUS, provide that: (1) "Shirts * * * are garments designed to cover the upper part of the body, having long or short sleeves and a full or partial opening starting at the neckline. They may also have pockets, but only above the waist, and a collar[;]" (2) "'Trousers' means garments which envelop each leg separately, covering the knees and usually reaching down to or below

the ankles; these garments usually stop at the waist;" and (3) "shorts [are] 'trousers' which do not cover the knee." 2 *Harmonized Commodity Description and Coding System: Explanatory Notes* 830, 834–35 (1st. ed. 1986); *see Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992) (noting that although they are not legally binding, explanatory notes are indicative of the proper interpretation of HTSUS headings). The court finds these descriptions match the articles at issue. Based upon examination of the merchandise, in conjunction with consideration of the trial testimony and all documents and exhibits submitted in this case, the court concludes that plaintiff has not overcome Customs' presumption of correctness and that the loungewear is properly considered and classified as shirts, trousers and shorts.

## CONCLUSION

Based on the statutory language and the applicable case law, plaintiff has not presented sufficient evidence to override Customs' presumption of correctness. The court finds Customs' classification under subheadings 6103.42.10 and 6105.10.00, HTSUS, to be correct. Judgment will be entered accordingly.