**Slip Op. 03-137**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  GREGORY W. CARMAN, CHIEF JUDGE

|  |  |
|---|---|
| **DOLLY, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Court No. 98-04-00677** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

[Judgment is entered for Plaintiff after trial as to Customs' classification of certain bags based upon all of the evidence, papers, and arguments submitted by the parties.  Defendant is directed to reliquidate the subject entries at the appropriate duty rate and refund any amounts owing, including interest, as provided for under the law.]

*Neville Peterson LLP* (*John M. Peterson, Curtis W. Knauss*), Washington, D.C., for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; *James A. Curley*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for Defendant.

Dated: October 22, 2003

## OPINION

**CARMAN, CHIEF JUDGE:**  Pursuant to 28 U.S.C. § 2640(a)(1) (2000), this Court tried a

classification dispute involving certain mini bags.[1]  Plaintiff, Dolly, Inc., challenges the United

---

[1] As discussed, this case turns on the proper description of the subject merchandise.  For the purposes of this opinion, the Court will use the general term "mini bags" to refer to the merchandise at issue.

States Department of Customs', now the Bureau of Customs and Border Protection, ("Customs")

classification of the mini bags under heading 4202 of the Harmonized Tariff Schedule of the

United States ("HTSUS") (1997), 19 U.S.C. § 1202 (1994). The Court has exclusive jurisdiction

pursuant to 28 U.S.C. § 1581(a). Based upon the findings of fact and conclusions of law set

forth below, the Court enters final judgment in favor of Plaintiff.

BACKGROUND

The seven entries at issue in this case were imported in 1997 through the Port of Dayton,

Ohio. (Pretrial Order, Schedule C, *Uncontested Facts* ¶ 1.) The mini bags were entered and

liquidated under subheading 4202.92.45 HTSUS. (*Id.* ¶ 2.) Heading 4202 provides:

> 4202    Trunks, suitcases, vanity cases, attache cases,
> briefcases, school satchels, spectacle cases,
> binocular cases, camera cases, musical instrument
> cases, gun cases, holsters and similar con-
> tainers; traveling bags, toiletry bags, knapsacks
> and backpacks, handbags, shopping bags, wallets,
> purses, map cases, cigarette cases, tobacco
> pouches, tool bags, sports bags, bottle cases,
> jewelry boxes, powder cases, cutlery cases
> and similar containers, of leather or of com-
> position leather, of sheeting of plastics, of
> textile materials, of vulcanized fiber, or
> of paperboard, or wholly or mainly covered
> with such materials or with paper:

***

> 4202.92        With outer surface of sheeting of
> plastic or of textile materials:
>                    Travel, sports and similar bags:
>                        With outer surface of textile
>                        materials:
>                            Of vegetable fibers and
>                            not of pile or tufted
>                            construction:

***

> 4202.92.45            Other............................ 20%

HTSUS (1997).  Accordingly, Customs assessed a tariff of 20% *ad valorem*.  Plaintiff protested

Customs' classification of the subject merchandise, asserting that Customs should have

classified the merchandise under subheading 3924.10.50, HTSUS, which provides:

| | | |
|---|---|---|
| 3924 | Tableware, kitchenware, other household articles and toilet articles, of plastics: | |
| 3924.10 | Tableware and kitchenware: | |
| 3924.10.10 | Salt, pepper, mustard and ketchup dispensers and similar dispensers | |
| 3924.10.20 | Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes and platters | |
| 3924.10.30 | Trays | |
| 3924.10.50 | Other.............................................. 3.4% | |

HTSUS (1997).  The corresponding duty rate under HTSUS 3924.10.50 is 3.4% *ad valorem*.

Customs denied Plaintiff's protests.  (Pretrial Order, Schedule C, *Uncontested Facts* ¶ 3.)

All liquidated duties, charges, and exactions for the subject entries were paid prior to the

commencement of this action.  (*Id*.)  Plaintiff seeks reliquidation of the subject entries and a full

refund of duties paid together with interest as provided by law.  (Complaint at 2-3.)  In 2001, the

parties filed cross-motions for summary judgment.  In denying the parties' cross-motions for

summary judgment, this Court held that there was a genuine issue of material fact as to the

proper description of the subject merchandise.  *Dolly, Inc. v. United States*, No. 98-04-00677,

2002 Ct. Int'l Trade LEXIS 58, at *9-*10 (Ct. Int'l Trade June 20, 2002).

Throughout the administrative process and this litigation, Plaintiff has continued to assert

that the mini bags were "designed[,] manufactured, marketed and sold to provide the insulated

transport and storage of infant and toddler's food and beverages." (Pretrial Order, Schedule D-1, *Pl.'s Claims and Defenses* ¶ 1.) As such, Plaintiff contends that the mini bags are correctly classified under 3924.10.50, HTSUS covering other household articles of plastic. (*Id*. ¶ 2.)

Defendant maintains that the bags at issue were properly classified by Customs as entered under heading 4202, HTSUS, covering travel bags and similar containers because the subject merchandise is "designed to hold during transport a variety of items used in caring for an infant or young child." (Pretrial Order, Schedule D-2, *Def.'s Liability Claims and Defenses* ¶ 1.) Defendant contends that the mini bags "are not principally used to prepare, serve or store food or beverages," as required under heading 3924; rather, the mini bags "are used to organize, store, protect and carry various items." (*Id*. ¶ 1-2.)

The Court held a bench trial on September 16, 2003, to resolve factual disputes surrounding the proper description of mini bags at issue and to determine the correct classification of the subject merchandise under the HTSUS.

### STANDARD OF REVIEW

The Court makes its determination *de novo* based upon the record before the Court, not upon the record developed by Customs. 28 U.S.C. § 2640. Customs classification rulings are usually accorded deference in proportion to their "power to persuade" following *United States v. Mead Corp.* and *Skidmore v. Swift & Co. See Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1355 (Fed. Cir. 2003) (citing *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001), in turn quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Federal Circuit has noted that the Supreme Court's decision in *Mead* "indicates that the following factors are to be evaluated when determining the degree of deference to accord a Customs classification ruling:

'its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight.' Those factors echo the factors set forth in *Skidmore* for determining the weight to accord an administrative ruling, interpretation, or opinion . . . 'depend[ent] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give power to persuade.'" *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1355-1356 (Fed. Cir. 2003) (quoting *Mead*, 533 U.S. at 235 and *Skidmore*, 323 U.S. at 140). However, in this case, Customs summarily denied Plaintiff's protests of the classification without issuing an official ruling, therefore the Court will consider the parties arguments without deference. *Hartog Foods v. Untied States*, 291 F.3d 789, 791 (Fed. Cir. 2002) ("[B]ecause Customs denied this protest without an official ruling, this court extends no *Skidmore* deference. This court therefore considers the parties' arguments in this case without deference."); *see also Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1307-1308 (Fed. Cir. 2003) (considering, without mention of *Skidmore* deference, Customs' summary denial of the plaintiff's protest of the classification of the subject merchandise).

**ANALYSIS**

"Although Customs's decision 'is presumed to be correct' on review, 28 U.S.C. § 2639(a)(1), the CIT 'may consider any new ground' even if not raised below, § 2638, and 'shall make its determinations upon the basis of the record made before the court,' rather than that developed by Customs, § 2640(a)." *Mead*, 533 U.S. at 233 n.16; *see also G&R Produce Co. v. United States*, No. 96-11-02569, 2003 Ct. Int'l Trade LEXIS 118, at *7 (Ct. Int'l Trade Sept. 15, 2003); *Int'l Home Textiles, Inc. v. United States*, No. 99-10-00627, 2001 Ct. Int'l Trade LEXIS 110, at *6 n.5 (Ct. Int'l Trade Aug. 10, 2001). Under § 2639(a)(1), the presumption of

correctness allocates the burden of proof to Plaintiff in presenting evidence that Customs'

classification of the subject merchandise was incorrect. *See Universal Electronics, Inc. v. United*

*States*, 112 F.3d 488, 493 (Fed. Cir. 1997).

The General Rules of Interpretation (GRI) of the HTSUS and the Additional United

States Rules of Interpretation direct the classification of merchandise entering the United States.

*See Len-Ron*, 334 F.3d at 1308; *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed.

Cir. 1998). The HTSUS is organized by headings, followed by one or more subheadings which

provide a more detailed segregation of the heading. *Orlando Food*, 140 F.3d at 1439. Under

GRI 1, the Court must first construe the language of the heading and any section or chapter notes

in question to determine whether the product at issue is classifiable under that heading. GRI 1,

6. After determining whether the merchandise is classifiable under the heading, the Court may

look to the subheadings to find the correct classification for the merchandise at issue. *Orlando*

*Food*, 140 F.3d at 1440; GRI 1, 6.

Determining the proper classification of the mini bags involves a two-step analysis: "(1)

ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining

whether the merchandise at issues comes within the description of such terms as properly

construed." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391; *see also Universal*

*Elecs.*, 112 F.3d. at 491. The first step is a question of law; the second is a question of fact. *Id*.

Turning first to the central question of law, the competing tariff provisions are heading

4202 and heading 3924, HTSUS. Heading 4202 provides for "[t]runks, suitcases, vanity cases,

attache cases, . . . and similar containers,"[2] and heading 3924 covers "[t]ableware, kitchenware,

other household articles and toilet articles, of plastics." HTSUS (1997).

Chapter 39, Note 2(ij) states that Chapter 39 does not cover "[s]addlery or harness

(heading 4201) or trunks, suitcases, handbags or other containers of heading 4202."

Accordingly, if the mini bags are prima facie classifiable under heading 4202, then applying

Note 2(ij), the mini bags are specifically excluded from classification under heading 3924. *See*

*Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423, 1429 (Fed. Cir. 1997).

Therefore, it is necessary to determine whether or not the mini bags are classifiable within

heading 4202 before heading 3924 can be considered. *Id.*

Heading 4202 and heading 3924 are organized as lists of items or exemplars followed by

general phrases: "similar containers" in heading 4202; "other household articles" in heading

3924. As the Federal Circuit has directed, "when a list of items is followed by a general word or

---

[2] In 2001, pursuant to Presidential Proclamation 7515, the term "insulated food or beverage bags" was added in the text of Heading 4202, HTSUS. Proclamation No. 7515, 66 Fed. Reg. 66,549, 66,619 (Dec. 18, 2001), *as corrected by* Technical Corrections to the Harmonized Tariff Schedule of the United States, 67 Fed. Reg. 2008 (Jan. 15, 2002). The provision now reads:

> Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials or with paper.

HTSUS 4202 (2003) (emphasis added). This change requires that all insulated food or beverage bags and similar containers, entered on or after January 10, 2002, be classified under Heading 4202. The Court notes that these mini bags were entered in 1997; therefore, the duty rate as it was determined then under the HTSUS will apply in this case. *See* 19 C.F.R. § 141.69.

phrase, the rule of *ejusdem generis*[3] is used to determine the scope of the general word or phrase." *Avenues in Leather, Inc. v. United States*, 178 F.3d 1241, 1244 (Fed. Cir. 1999) (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)). "In classification cases, *ejusdem generis* requires that . . . the [subject] merchandise must possess the same essential characteristics or purposes that unite the listed examples preceding the general term." *Id*. (citations omitted). Under an *ejusdem generis* analysis, this Court "must consider the common characteristics or unifying purpose of the listed exemplars in a heading as well as consider the specific primary purpose of the imported merchandise." *Id*. The Federal Circuit has noted that "[c]lassification . . . under *ejusdem generis* is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars." *Id*. (citations omitted).

First, the Court must consider the common characteristics or unifying purpose of the exemplars listed in the tariff provisions relevant in this case: heading 4202 and heading 3924, HTSUS. This particular question has been addressed in prior cases before this Court and the Federal Circuit. *See, e.g., Len-Ron Mfg. Co. v. United States*, 118 F. Supp. 2d 1266 (Ct. Int'l Trade 2000), *aff'd*, 334 F.3d 1304 (Fed. Cir. 2003) (determining the proper classification of small plastic cosmetic bags used in cosmetic sales promotions under heading 4202); *Avenues in Leather, Inc. v. United States*, 11 F. Supp. 2d 719 (Ct. Int'l Trade 1998), *aff'd*, 178 F.3d 1241, 1242 (Fed. Cir. 1999) (affirming Customs' classification of leather folios used to store, organize, and carry papers, books, pens, pencils, etc. under heading 4202); *SGI, Inc. v. United States*, 917 F. Supp. 822 (Ct. Int'l Trade 1996); *rev'd*, 122 F.3d 1468, 1469 (Fed. Cir. 1997) (examining the

---

[3] "Of the same kind, class, or nature." BLACK'S LAW DICTIONARY 517 (6th ed. 1990).

applicability of headings 4202 and 3924 in classifying "portable soft-sided vinyl insulated coolers with handles or straps used for storage of food or beverages"); *Totes, Inc. v. United States*, 865 F. Supp. 867 (Ct. Int'l Trade 1994), *aff'd*, 69 F.3d 495 (Fed. Cir. 1995) (considering the classification of "Totes Trunk Organizers" under heading 4202); *Sports Graphics, Inc. v. United States*, 806 F. Supp. 268 (Ct. Int'l Trade 1992), *aff'd*, 24 F.3d 1390 (Fed. Cir. 1994) (reviewing the classification of soft-sided plastic containers with foam insulation, a zippered top, and carrying straps under competing provisions of the Tariff Schedules of the United States ("TSUS") that are similar to headings 4202 and 3924, HTSUS.)

"It is well-established that the essential characteristic and purposes of the heading 4202, HTSUS, exemplars is 'to organize, store, protect and carry various items.'" *Len-Ron*, 118 F. Supp. 2d at 1279-1280 (quoting *SGI*, 122 F.3d at 1471; *Totes*, 865 F. Supp. 867, 872), *see also Len-Ron*, 334 F.3d at 1309 n.4. ("This court has noted that the essential characteristics of the exemplars listed in Heading 4202 are to organize, store, protect and carry various items.").

The essential characteristic and purpose of the exemplars listed in heading 3924, HTSUS is to store or contain food and beverages. *SGI*, 122 F.3d at 1473 ("The exemplars listed in Heading 3924 encompass various household containers for foodstuffs."). Although acknowledging that the Explanatory Notes are not controlling legislative history, the Federal Circuit looked to the Explanatory Notes accompanying heading 3924 for additional guidance. *Id.* "The explanatory notes specifically mention 'luncheon boxes,' an article similar to the coolers at issue, as 'other household articles.'" *Id.* The Federal Circuit agreed with this Court's analysis that "the coolers [could] be considered 'household articles [because they] may be used in a number of locations where food or beverages might be consumed, such as in and around the

home and during trips away from home on picnics, sporting, and at spectator and participation sporting events.'" *Id.* (quoting *SGI*, 917 F. Supp. at 825).

Under the second step in the *ejusdem generis* analysis, the Court must "consider the specific primary purpose of the imported merchandise." *Avenues in Leather*, 178 F.3d at 1244. The specific primary purpose "must be [the subject merchandise's] predominant use, rather than simply one possible use." *Len-Ron*, 334 F.3d at 1311. To determine the specific primary purpose, the Court "must look to all the pertinent circumstances . . . includ[ing] the general physical characteristics of the merchandise, the expectation of the ultimate purchasers, the channels, class or kind of trade in which the merchandise moves, the environment of the sale (i.e., accompanying accessories and the manner in which the merchandise is advertised and displayed), [and] the use." *United States v. Carborundum Co.*, 536 F.2d 373, 377 (C.C.P.A. 1976). Once the specific primary purpose of the subject merchandise has been established, the Court must determine if the subject merchandise shares the same essential characteristic or purpose as the exemplars in the competing headings.

When comparing between classification under heading 4202 and heading 3924, HTSUS, the Federal Circuit noted with approval this Court's analysis that "the focus should be on whether food or beverage is involved." *SGI*, 122 F.3d at 1469, 1471-72; *see also Sports Graphics*, 24 F.3d at 1393 ("The trial court concluded that when determining the classification of the merchandise at issue here, under a proper analysis, the focus should be on whether food or beverage is involved. We agree."). The appellate court held that "[i]n focusing on whether food or beverage is involved, it is clear that the [subject] merchandise has a different purpose, <u>the storage of food and beverage</u>, which precludes the merchandise from being *ejusdem generis* with the exemplars listed in [4202]." *SGI*, 122 F.3d at 1469-1470 (emphasis added).

Here, the trial on September 16, 2003, was held to establish the specific primary purpose of the mini bags at issue. As Defendant asserts, if the Court finds that the specific primary purpose of the mini bags is to "organize, store, protect, and carry various items," then the mini bags were correctly classified by Customs under 4202 and are specifically excluded from classification under heading 3924 by operation of Chapter 39, Note 2(ij). However, consistent with Plaintiff's contentions, if the Court finds that the specific primary purpose of the mini bags is to "store food and beverages," then, following the Federal Circuit's analysis in *SGI*, the mini bags are precluded from being *ejusdem generis* with the exemplars listed in 4202 and should be classified under heading 3924, HTSUS.

### A. Findings of Fact

Pursuant to Rule 52(a), "in all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." USCIT R. 52(a) (2002). As stated above, determining whether the mini bags come within heading 4202 or heading 3924 as properly construed, is a question of fact. *See Universal Elecs.*, 112 F.3d at 491. Under the *ejusdem generis* analysis, having already established the essential characteristics or purposes of the exemplars in heading 4202 and heading 3924, the Court must now find the specific primary purpose of the mini bags. *See Avenues in Leather*, 178 F.3d at 1244. As detailed below, the evidence presented at trial supports the finding that the mini bags at issue are of a distinct class or kind of merchandise within the juvenile products industry that have the specific primary purpose of transporting and storing infant and toddler food and beverages at a desired temperature over a period of time.

The following uncontested facts were agreed to by the parties in the pretrial order submitted to the Court on September 3, 2003.

1. The bags at issue were imported under the following seven entries listed on the summons: Entry Nos. F81-0068724-0, F81-0068823-0, F81-0068830-5, F81-0068750-5, F81-0068831-3, F81-0068914-7, F81-0068946-9. (Pretrial Order, Schedule C, *Uncontested Facts* ¶ 1.)

2. The bags at issue are nine different styles, designated by Dolly, Inc. as style numbers 1270, 8458, 8467, 8477, 8483, 8496, 8498, 8499, and 8525. (*Id*. ¶ 1.)

3. The bags at issue share several common design features: each bag has either a zipper or a hook and loop closure on top; the interior of each bag contains elastic bottle loops; the bags have attached carrying straps; and five of the bags have small exterior pockets. (*Id*. ¶¶ 5-9.)

The Court finds the following facts based upon the parties' submissions at trial and the Court's examination of the evidence:

4. The nine mini bag styles at issue are described in Dolly's advertising literature as follows: Style No. 1270 "Pooh 'Profile' Mini Bottle Tote" (Def.'s Ex. I at 40); Style No. 8458 "Noah's Parade Mini" (*Id*. at 44, 50); Style No. 8467 "Pastel Icons Mini" (*Id*. at 57); Style No. 8477 "Checkerboard Mini" (*Id*. at 71); Style No. 8483 "Bedtime Babies Mini" (*Id*. at 34); Style No. 8496 "Alphabet Mini" (*Id*. at 70); Style No. 8498 "Checks Mini" (*Id*. at 72); Style No. 8499 "Honeypots Mini" (*Id*. at 63); Style No. 8525 "Noah's 2 by 2 Mini." (*Id*. at 44, 49).

5. The mini bags are made of three layers of plastic: a decorative outer layer; an insulative middle layer approximately one-fourth of an inch thick; and an interior layer of white plastic. (*See* Pl.'s Exs. 1-9.)

6.    The main distinguishing feature among the bags is the decorative graphics featured on the outer layer of plastic, for example, Disney characters, Winnie the Pooh, Noah's Ark, etc., which do not affect the classification of the merchandise. (*Id*.)

7.    Although each bag has slightly different dimensions, overall, the bags are approximately nine inches long, four and one-half inches wide, and ten and one-half inches high. (*See* Pl.'s Exs. 1-9; Def.'s Ex. J, Diaper Bag Specifications Style No. 8496; Def.'s Ex. K, Diaper Bag Specifications Style No. 8498; Def.'s Ex. L, Diaper Bag Specifications Style No. 8467; Def.'s Ex. M, Diaper Bag Specifications Style No. 8525; Def.'s Ex. N, Diaper Bag Specifications Style No. 8458; Def.'s Ex. O, Diaper Bag Specifications Style No. 8499.)

8.    Most of the styles of mini bags at issue have a stiff white plastic-coated cardboard floor insert so that the items placed inside the mini bags will not fall over. (Pl.'s Exs. 2-9.)

9.    The mini bags possess some insulative properties.[4]

10.    Plaintiff presented the testimony of Mr. Dennis J. Sullivan, President and C.E.O. of Dolly, Inc. since 1985. (Trial Tr. at 18, 20.)

11.    Mr. Sullivan has over 30 years of experience in the juvenile industry, including participation and leadership in various juvenile trade associations. (*Id*. at 19-24.)

---

[4] During the course of his testimony, Mr. Sullivan, president and C.E.O. of Dolly, Inc., was presented with two bottles of cold milk. Plaintiff's counsel asked Mr. Sullivan to place one bottle of cold milk inside one mini bag, Style No. 1270, and allowed the other bottle of cold milk to remain exposed to the open air of the courtroom. (Trial Tr. at 27-28.) Each bottle had a thermometer attached which read 33.8 degrees. (*Id*. at 27.) After approximately fifty minutes, Mr. Sullivan read the temperatures on the bottles. (*Id*. at 69-70.) The bottle inside the mini bag maintained a colder temperature, 44.4 degrees, versus the bottle that was exposed to the open air of the courtroom, 52.8 degrees. (*Id*. at 69)

12.     Mr. Sullivan's testimony was based on his professional experience and various market research that had been conducted by Dolly, Inc. regarding their full line of juvenile products. (*Id*. at 36.) The Court finds his testimony credible and highly probative.

13.     Plaintiff also presented the testimony of Ms. Tracy Bowden, a former buyer of juvenile products for the Kmart Corporation. (*Id*. at 88, 91.)

14.     Ms. Bowden has over fifteen years of experience in the juvenile products line. (*Id*. at 88, 109.)

15.     Ms. Bowden's testimony was based on her professional experience and Kmart's sales records. (*Id*. at 96, 109.) The Court finds the testimony given by Ms. Bowden credible and highly probative.

16.     In the juvenile products industry, there is a general umbrella category of products referred to as "diaper bags." (*Id*. at 24, 93.)

17.     Within that umbrella category, the industry recognizes two distinct kinds of merchandise: diaper bags or standard tote bags and mini bags. (*Id*. at 24, 85, 93.)

18.     Diaper bags or standard tote bags are marketed, designed, and primarily used to carry various baby necessities. (*Id*. at 56-58, 102.) These standard tote bags are large, at least twice the size of mini bags, have greater storage capacity, usually have multiple interior and exterior pockets or compartments for organizing various baby necessities, and often come with a separate "dirty duds" bags to hold soiled clothing. (*Id*. at 59-61, 103-104.)

19.     Mini bags are marketed, designed, and primarily used to carry baby bottles, jars of baby food, "sipee" cups for toddlers, and other feeding items for toddlers and infants. (*Id*. at 26-28, 53-54, 58, 94-95, 102, 104.) Mini bags are small, insulated bags, usually with

only one storage compartment, and contain elastic bottle loops in the interior of the bag. (*Id*. at 25, 30-51, 94-97; Pl.'s Exs. 1-9; )

20.    Consumers generally purchase both kinds of bags, standard totes and mini bags, because they are used for two different functions. (*Id*. at 31-33, 95-96.)

21.    Mini bags are used on trips when storing baby bottles and food is the primary concern. (*Id*. at 52, 102.)

22.    The main reason why purchasers buy mini bags is to transport baby food, bottles, milk, formula, etc. (*Id*. at 32-33, 102, 107.)

23.    Mini bags allow consumers to keep feeding items separate from diaper changing items. (*Id*. at 32-33, 61.)

24.    Mini bags are not primarily used to carry other baby necessities (i.e., toys, clothing, diaper changing accessories) because consumers want to keep baby food, bottles, and feeding accessories away from other baby items that might be soiled. (*Id*. at 32.)

25.    Mini bags are generally sold in the infant department of retail stores with the other juvenile products. (*Id*. at 36-37, 96-97, 158.)

26.    Mini bags are usually sold adjacent to feeding accessories and sometimes near diapering supplies. (*Id*. at 96, 102, 158.)

27.    Five styles of the mini bags submitted into evidence have "hang tags" attached which are intended to advertise the mini bags to the consumer. (*See* Pl.'s Exs. 1, 2, 4, 6, 8.) Four of the hang tags describe the merchandise as "mini totes," and list the features as "insulated fabric keeps contents warm or cool – elastic bottle loops inside – waterproof lining/vinyl lining – vinyl wipes clean with damp cloth – fabric styles hand washable." (Pl.'s Exs. 1,

8, 6, 4.)  One hang tag describes the merchandise as a "diaper bag" and lists the features as "fashion friendly diaper bags for all those away-from-home baby necessities.  Inside bottle holders – comfortable shoulder-length handles – water resistant lining – easy care, wipe-clean fabrics."  (Pl.'s Ex. 2.)

28.    The subject merchandise is referred to by many names throughout Dolly, Inc.'s various advertisements, price lists, invoices, and product specifications: "mini" (Def.'s Ex. I at 23-24, 33-34, 38-39, 44-45, 57, 63, 70-72, 84, 94-95, 99-102, 104-111, 113-120, 122-123, 126-127, 130-132, 134-136); "bottle tote" (*Id*. at 74-76, 81-82, 85); "mini bag" (*Id*. at 86-92); "mini diaper bag" (*Id*. at 85, 93, 96); "mini-tote" (*Id*. at 85, 128); and "mini bottle tote" (*Id*. at 25, 40).

29.    One style of the subject merchandise is described on Dolly's price list as "Disney Babies Bottle Tote," under the general category of "Diaper Bags."  (*Id*. at 74.)

30.    In one Dolly, Inc. advertisement, standard tote bags and mini bags are marketed as "New Disney Diaper Bags and Bottle Totes."  (*Id*. at 75.)  The advertisement states that "Dolly and Disney team up to bring fashion and function together in this new line of diaper bags and bottle totes." (*Id*.)  Further, the advertisement states that "[a] bottle tote, a standard and a deluxe diaper bag are available in pink or blue." (*Id*.)

31.    Another Dolly, Inc. advertisement presents standard tote bags and mini bags as "New Dolly Diaper Bags and Bottle Totes."  (*Id*. at 81.)

32.    Dolly, Inc. urges retailers in one advertisement to "[s]tock Disney Babies Diaper Bags and Bottle Totes."  (*Id*. at 82.)

33.   Another Dolly, Inc. advertisement attempts to sell to retailers an in-store merchandising aid which describes the subject merchandise as a "Lunch Bag, Bottle Tote, Mini Diaper Bag, School Tote, Carry-all for Travel." (*Id*. at 85.)

34.   The subject merchandise is described as "bottle bags" in Plaintiff's protests. (*Id*. at 35-36, 20-21, 26-27, 41-42, 51-52, 58, 64.)

35.   In the invoices, packing lists, and weight lists provided to Plaintiff by its Hong Kong exporters, the subject merchandise is listed as "PVC diaper bags." (*Id*. at 29-32, 47, 54-56, 60-62, 66-69.)

36.   The subject merchandise is listed as "diaper bags" on the entry papers. (Def.'s Exs. A-G.)

37.   Defendant presented the testimony of Mr. Kevin P. Gorman. (Trial Tr. at 114.) The Court finds the testimony given by Mr. Gorman to be credible and probative.

38.   Since 1975, Mr. Gorman has been a national import specialist in charge of the product line covered by heading 4202, HTSUS. (*Id*. at 117-118, 120.)

39.   Mr. Gorman based his knowledge regarding the subject merchandise on his examination of the mini bags, visits to various retail stores over the course of his employment with Customs, his personal observations, and general knowledge. (*Id*. at 156, 159.)

40.   Mr. Gorman conceded that the mini bags were insulated. (*Id*. at 147-148.)

41.   Mr. Gorman testified that he had attended "all types of trade shows that might be relevant to the assigned line of merchandise." (*Id*. at 120.) Yet, Mr. Gorman acknowledged that he had never attended a trade show for juvenile products. (*Id*. at 181.)

### 1. Factual Conclusions

At trial, Defendant claimed that the bags at issue are merely smaller versions of standard tote bags and are manufactured, designed, and primarily used to carry various baby necessities. (*Id*. at 193.)  The Court is not persuaded by Defendant's claims.  At trial, Defendant relied heavily on the Hong Kong exporters' invoices and packing lists, and a few references in Dolly Inc.'s literature, that identify the subject merchandise as "diaper bags."  (Trial Tr. at 197-198.)  However, a thorough review of the exhibits submitted by Defendant reveals that Dolly, Inc. refers to the subject merchandise by a variety of names, most commonly "mini" or "mini bottle totes."  (*See generally* Def.'s Ex. I.)  Further, the former buyer for Kmart testified that the subject merchandise is recognized throughout the juvenile products industry as "minis."  (Trial Tr. at 93.)   The overwhelming evidence presented at trial indicates that the mini bags are a distinct product, identifiable within the juvenile products industry, and recognized by retailers and consumers.  The Court finds the testimony of Mr. Sullivan and Ms. Bowden very persuasive. As this Court's predecessor stated: "It has long been held that importers and merchants have every incentive for knowing the uses to which their goods are or may be put. . . .  [E]xecutives concerned with designing, framing specifications, ordering, importing, selling, distributing, and promoting an article have to know its chief uses and are competent to testify about them. *Novelty Import Co. v. United States*, 285 F. Supp. 160, 165-166 (Cust. Ct. 1968) (citation omitted), *see also Mast Indus., Inc. v. United States*, 9 C.I.T. 549, 551-552 (Ct. Int'l Trade 1985).  Defendant did not present any contrary evidence of use, other than Mr. Gorman's anecdotal evidence regarding his personal observations of the general public.  Although Plaintiff conceded that the mini bags could be used to carry anything that would fit inside (Trial Tr. at 79-

80), that possibility does not change the fact that the use of the mini bags "which exceeds all others" is the storage of food and beverages. *Sports Graphics*, 24 F.3d at 1392-1394.

The former Court of Customs and Patent Appeals stressed that in classification disputes, "the [subject] merchandise itself may be strong evidence of use." *Mast Indus.*, 9 C.I.T. at 552 (citing *United States v. Bruce Duncan Co.*, 50 C.C.P.A. 43, 46 (1963)); *see also Int'l Home Textiles*, 2001 Ct. Int'l Trade LEXIS at *10. Here, the Court has examined the mini bags at issue and concludes that the mini bags are small, insulated, posses a single compartment, lack other organizing features, and have at least two elastic bottle loops that, when filled with bottles of milk or jars of baby food, would leave little room for much else. Although some styles of the mini bags at issue have a small, flat pocket on the front panel of the bag, this design feature does not add significant storage space or other organizational properties that might change the primary use of the subject merchandise. Weighing all of the evidence submitted, the Court finds that the mini bags have the specific primary purpose of transporting and storing infant food and beverage over a period of time in an insulated environment.

## B. Conclusions of Law

In light of the factual findings set forth above, the Court concludes that the mini bags at issue do not share the essential characteristics of the exemplars listed in heading 4202, that is, containers whose principal use is to protect, carry, and store various items. Similar to the cooler bags examined in *SGI*, the mini bags at issue have the specific primary purpose of transporting and storing food and beverages in an insulated environment. As the appellate court reasoned in *SGI*, merchandise that has the specific primary purpose of storing food and beverages, is "preclude[d] . . . from being *ejusdem generis* with the exemplars listed in [4202]." *SGI*, 122 F.3d at 1469-1470.

Because the mini bags' primary purpose of storing and transporting food and beverages precludes classification under heading 4202, the Court next examines whether classification under Plaintiff's proposed heading 3924, HTSUS, would be appropriate. In considering classification under 3924, the focus should be on whether food and beverage in involved. *SGI*, 122 F.3d at 1469; *see also Sports Graphics*, 24 F.3d at 1393. As the Federal Circuit stated in *SGI*, "none of the exemplars under [4202] involves containment of any food or beverage . . . however, [heading 3924] does encompass exemplars that are *ejusdem generis* with the [subject merchandise] because their purpose is to contain food and beverages." *SGI*, 122 F.3d at 1472. The Court concludes that the mini bags at issue are *ejusdem generis* with the exemplars listed in 3924 because the mini bags' specific primary purpose is to contain food and beverages.

Under the GRI 6, the next step in the analysis is examining the classification of the mini bags under the appropriate subheading. *See* GRI 6. Heading 3924, HTSUS is organized as follows:

3924    Tableware, kitchenware, other household articles
and toilet articles, of plastics:

     3924.10      Tableware and kitchenware:

     3924.10.10          Salt, pepper, mustard and ketchup dis-
pensers and similar dispensers

     3924.10.20          Plates, cups, saucers, soup bowls,
cereal bowls, sugar bowls, creamers,
gravy boats, serving dishes and
platters

     3924.10.30          Trays

     3924.10.50          Other.............................................. 3.4%

HTSUS (1997). The catch-all subheading, 3924.10.50, "Other," is appropriate because the other subheadings under 3924 are inapposite. *See Orlando Food*, 140 F.3d at 1442. "Absent a more apt subheading," the catch-all subheading 3924.10.50, HTSUS is the appropriate classification for the mini bags at issue. *See id.* Accordingly, the Court concludes that the mini bags are correctly classified under subheading 3924.10.50, HTSUS. The corresponding duty rate under 3924.10.50, HTSUS, is 3.4% *ad valorem*. HTSUS (1997).

CONCLUSION

In accordance with the foregoing findings of fact and conclusions of law, the Court concludes that the bags at issue are properly classified under HTSUS subheading 3924.10.50. Defendant is directed to reliquidate the subject entries at the appropriate duty rate and refund any amounts owing, including interest, as provided for under the law.

_____
Gregory W. Carman
Chief Judge

Dated: October 22, 2003
New York, New York