Slip Op. 05 - 159

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x

DECKERS CORPORATION,                    :

                   Plaintiff, :

          v.                 : Court No. 02-00674

THE UNITED STATES,                      :

                   Defendant. :

- - - - - - - - - - - - - - - - - - - x

<u>Memorandum & Order</u>

[Defendant's motion for summary judgment as to
 classification of sandals from China denied.]


                              Dated:  December 15, 2005


     <u>Rode & Qualey</u> (<u>Patrick D. Gill</u>, <u>Michael S. O'Rourke</u> and <u>Will-
iam J. Maloney</u>) for the plaintiff.

     <u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S.
Williams</u>, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (<u>James A. Curley</u>); and Office of Assistant Chief Counsel,
U.S. Customs and Border Protection (<u>Michael W. Heydrich</u>), of coun-
sel, for the defendant.


          AQUILINO, Senior Judge:  In Hebrew, *Teva* means Nature.

In American, it can mean sandals under patent that have been

produced in Hong Kong for import here, the tariff classification of

three models of which, the *Pretty Rugged Sport Sandal*, the *Terra-
dactyl Sport Sandal*, and the *Aquadactyl Sport Sandal*, is the basis

of this test case within the meaning of USCIT Rule 84(b).  Upon

entry of those particular *Teva*®s through the port of Los Angeles,

California, the U.S. Customs Service, as it was then still known, classified them under heading 6404 (footwear with outer soles of rubber or plastics and uppers of textile materials) of the Harmonized Tariff Schedule of the United States ("HTSUS") (1998), in particular subheading 6404.19.35 at a rate of duty of 37.5 percent *ad valorem*. The plaintiff protested that classification, taking the position that those sandals should have been classified under subheading 6404.11.80, which prescribed a duty of 20 percent *ad valorem* plus 90¢ per pair valued over $6.50 but not over $12. Customs denied the protest, and this case commenced.

I

The court's jurisdiction is pursuant to 28 U.S.C. §§ 1581(a), 2631(a). The gravamen of plaintiff's complaint is that its merchandise is "athletic footwear", which is sold as such "for sporting and athletic purposes including, but not limited to, whitewater river rafting". Complaint, para. SEVENTEENTH. Following the filing of defendant's answer and the completion of discovery, counsel for the plaintiff filed a formal request for trial in the federal courthouse in Santa Barbara, California[1], which apparently is located near its corporate headquarters and possible witnesses. The defendant objected to that request, in part upon the stated ground that

> [w]hether Customs correctly interpreted subheading
> 6404.11.80, HTSUS, to require that the imported sandals
> be *ejusdem generis* with the named exemplars is a question

_____

[1] Cf. USCIT Rule 77(c)(2).

of law.  As such, there is no genuine issue of material
fact in dispute as to that question, which can be decided
on summary judgment.  Moreover, the thrust of the
plaintiff's complaint rests on the meaning of the
competing tariff provisions.  . . . If the Court decides
on summary judgment that the imported sandals are not
*ejusdem generis* with the named exemplars, then there is
no need for a trial.

Defendant's Opposition to the Plaintiff's Request for Trial, pp. 4-
5 (citation and footnote omitted).

Upon hearing both sides with regard to this opposition,
the court granted the defendant leave first to interpose a motion
for summary judgment on the issues that it claims are dispositive
of this test case.  As posited in such motion subsequently filed,
they are:

1.  Whether . . . Customs . . . correctly classified
    the imported sandals under subheading 6404.19.35,
    HTSUS, as "footwear with open toes or open heels,"
    *etc.*

2.  Whether the imported sandals should have been class-
    ified under subheading 6404.11.80, HTSUS, as "ten-
    nis shoes, basketball shoes, gym shoes, training
    shoes and the like" *etc.*, as contended by the plain-
    tiff.

Defendant's Brief, p. 1.  Plaintiff's papers in opposition
formulate the questions as follows:

1.  Whether the term "tennis shoes, basketball
shoes, gym shoes, training shoes and the like" in sub-
heading 6404.11 covers all athletic footwear (other than
sports footwear as defined in subheading Note 1 to
Chapter 64).

2.  Whether the term "athletic footwear" in Ad-
ditional U.S. Note 2 to Chapter 64 is an *eo nomine* pro-
vision which includes all forms of athletic footwear.

3. Whether there are genuine issues of material fact as to whether the imported merchandise is within the common meaning of the term "athletic footwear."

Plaintiff's Brief, p. 2. The last question presented is a reflection of plaintiff's continuing opposition to resolution of this action without trial *viz*.:

. . . In this instance defendant "bears the burden of demonstrating the absence of all genuine issues of material fact." *Avia Group Int'l. Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir. 1988). Plaintiff has identified . . . numerous material issues concerning "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because this action puts into issue the use, characteristics or properties of the merchandise being classified, summary judgment is not warranted. *See, Brother Int'l. Corp. v. United States*, 248 F.Supp.2d 1224, 1226 (CIT 2002).

Id. at 1-2.

II

As required by USCIT Rule 56(h), defendant's motion includes a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried, to wit:

1. The plaintiff imported sandals . . . in Entry No. 275-0139524-1 . . . [, which] was liquidated . . . under subheading 6404.19.35, . . . HTSUS . . .. The plaintiff filed Protest No. 2704-99-100787 with . . . Customs . . ., claiming that the entry should have been classified under subheading 6404.11.80, HTSUS . . ..

2. . . . Customs denied that part of Protest No. 2704-99-100787 directed to the plaintiff's claim to classification of the imported sandals under subheading 6404.11.80 HTSUS . . . based on HQ 963395 ruling, which issued on April 2, 2002. . . .

3.  The imported merchandise in issue consists of three styles . . . [that] are shown in the plaintiff's catalog, which is entitled "Teva Footwear and Apparel Spring 2000."  The Pretty Rugged sandal is shown on page 9 . . ., the Terradactyl sandal is shown on pages 8 and 9 . . ., and the Aquadactyl sandal is shown on page 6 . . ..  Copies of these pages . . . are included in Defendant's Exhibit A . . ..

4.  The sandals in issue[] have uppers composed of textile materials and soles composed of rubber or plastics.  . . . The front or toe end of each sandal's upper consists of two flat, looped, textile straps that are joined together by a plastic ring.  The longer of the two looped straps is adjustable and secures with a hook and loop fabric closure.  The straps are attached to the sandal's foot bed to anchor the strap at two points.  The rear or heel end of each upper consists of two flat, looped, textile side posts which are attached to the sandal's foot bed.  Each post is joined by a plastic ring to adjustable ankle straps which secure with hook and loop fabric closures at the front and back of the ankle. The front straps are connected to the rear straps by a flat looped strap of textile material.  The sandals are open at the toe, heel, top and sides.  . . .

5.  The sandals in issue do not have, or have provision for, the attachment of spikes, sprigs, cleats, stops, clips, bars or the like.  . . .

Citations omitted.  That Rule 56(h) provides that all material facts in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.  Plaintiff's response is set forth in Section III B of its brief under the heading: "Plaintiff Does Not Agree that Most of Defendant's Numbered Statements of Material Facts Are Not At Issue."  It makes no reference to defendant's paragraph 5, which is thus deemed admitted.  Cf. Plaintiff's Brief, p. 11; Subheading Note 1, ch. 64,

HTSUS.  As for the four other paragraphs, plaintiff's response is not in keeping with the expectation of that rule or of this court.

Be that as it is, plaintiff's position is and has been clear: it desires a trial in order to attempt to prove its own Statement of Genuine Material Facts Which Are at Issue[2], to wit:

1.   The merchandise in question is "athletic footwear" as provided for in Additional U.S. Note 2 to Chapter 64.

2.   The imported merchandise is sold as athletic footwear.

3.   Merchandise in issue is used for sporting and athletic purposes including, but not limited to, whitewater rafting.

4.   The imported merchandise is sold under the registered trademark Teva® and is patented in the United States Patent Office (Patent #4,793,075), described as "SPORT SANDAL FOR ACTIVE WEAR."

5.   Teva® sport sandals are conducive to fast footwork associated with athletic activities.

6.   The imported footwear is the type commonly referred to by the footwear industry and consumers as sport sandals or athletic sandals.

7.   Sport sandals are recognized as athletic footwear by the footwear industry.

See also Plaintiff's Brief, pp. 17-24.

―――――――――――――――――――

[2] Complete capitalization deleted.

Defendant's Response to Plaintiff's Statement of Material Facts at Issue, attached to its reply brief[3], denies these aver-ments.  See also Defendant's Brief in Reply, pp. 15-19.  That brief argues that, even assuming *arguendo* that the allegations in para-graphs 2-7 are true, the sandals at bar still are not athletic footwear for tariff purposes because they are not tennis shoes, basketball shoes, gym shoes, training shoes, or like those shoes. See id. at 17-19.  Whatever the precise formulation of the issue(s), the court cannot conclude that resolution thereof can be achieved without trial of any of plaintiff's averments of fact.

A

The physical appearance of the merchandise cannot be disputed.  In its complaint, the plaintiff points to U.S. Patent Number 4,793,075, an abstract of which states:

> A sandal with an elongated sole configured to the profile of a human footprint with a toe end and a heel end, employs a toe strap connected at two anchor points to grip the forward part of [a] user's foot and a heel strap connected at two anchor points to grip the ankle of a user's foot with a lateral strap connected between the toe strap and the heel strap which is located on the outside of the sole and parallel to its surface so it is operable to stabilize the other straps and to maintain essentially constant tension in the individual straps as the sole flexes, with the toe and heel straps being

---

[3] Id. Defendant's motion for leave to file this "oversized" presentation can be, and it hereby is, granted.

Indeed, the quality of the written submissions on both sides obviates the need to grant plaintiff's motion for oral argument, which is thus hereby denied.

infinitely adjustable so the wearer can cinch the sandal
to his foot by adjusting said straps in a manner that it
will not be dislodged during rigorous activity.

Plaintiff's Exhibit 2, p. 1. FIG _ 2 of that patent provides a
schematic representation that is reproduced below:



As indicated, this product has both an open toe and open heel which

place it within the ambit of subheading 6404.19.35, HTSUS[4], to wit:

6404            Footwear with outer soles of rubber, plastics,
                leather or composition leather and uppers of
                textile materials:

                        Footwear with outer soles of rubber or
                        plastics:

---

[4] The sandals do not land under subheading 6404.19.25, HTSUS,
because they are more than ten percent by weight of rubber or
plastics.  See Defendant's Motion for Summary Judgment, Declaration
of Richard G. Foley, para. 5.

6404.19                    Other:

                                   Footwear with open toes or
                                   open heels; . . .

6404.19.35                                 Other: . . . . . . ..


Nonetheless, the plaintiff argues that General Rule of Interpretation ("GRI") 3(a) calls for classification under a more specific description.  That rule states, in part:

> When . . . goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:
>
> (a)  The heading which provides the most specific description  shall  be  preferred  to  headings providing a more general description.  . . .

And since GRI 6 allows for application of the rule to subheadings, the plaintiff contends that the more specific classification lies in 6404.11.80[5], *viz*:

6404.11    Sports  footwear;  tennis  shoes,  basketball shoes, gym shoes, training shoes and the like:

                   Other:

6404.11.80             Valued over $6.50 but not over $12/pair . . . . . . . . . . . ..

The defendant does not agree.

_____

[5] <u>See</u> Complaint, para. NINTH:

If  the  imported  merchandise  is  described  in  both subheading 6404.19.35, HTSUS, and subheading 6404.11.80, HTSUS, classification under subheading 6404.11.80, HTSUS, is required since that is the provision which contains the most specific description of the merchandise under G[RI] 3(a), HTSUS.

III

To determine whether the merchandise at bar should have been classified under this subheading, the court must first ascertain the meaning of the relevant tariff terms.  See, e.g., Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994); Warner-Lambert Co. v. United States, 28 CIT ___, ___, 341 F.Supp.2d 1272, 1276 (2004), aff'd, 425 F.3d 1381 (Fed.Cir. 2005).  This, of course, is fundamentally a question of law. E.g., Universal Electronics Inc. v. United States, 112 F.3d 488, 491 (Fed.Cir. 1997); Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed.Cir. 1995).

A

The plaintiff is of the view that the term "tennis shoes, basketball shoes, gym shoes, training shoes and the like" is "defined by Additional U.S. Note 2 to Chapter 64 as all 'athletic footwear' subject to certain exceptions which the parties agree do not apply to the Teva® sport sandals".  Plaintiff's Brief, pp. 2-3 (emphasis in original).  It postulates that

> Congress eliminated the need to make subjective determi-
> nations as to whether shoes other than the named exem-
> plars are "like" the named exemplars.  It laid this issue
> to rest by putting the named exemplars and any shoes like
> them in one defining basket: "athletic footwear."  Hence,
> there is no need to make the subjective and contentious
> determinations of what is "like" as suggested by defend-
> ant since Congress has defined the entire term including
> the exemplars and the term "and the like" as meaning
> athletic footwear.

Id. at 7.  On its face, however, the language of that additional note is not so convincing, stating only that, for

> the purposes of this chapter [64], the term "<u>tennis shoes, basketball shoes, gym shoes, training shoes and the like</u>" covers athletic footwear other than sports footwear (as defined in subheading note 1 . . .), whether or not principally used for such athletic games or purposes.

Emphasis in original.  Thus, to attempt to extrapolate therefrom congressional intent to substitute, for purposes of interpreting subheading 6404.11.80, "athletic footwear" for the list of exemplars and their like is tenuous.  <u>Cf</u>. Defendant's Brief, pp. 16-17:

> The plaintiff's interpretation of Note 2 [] is incorrect because it gives no effect to the language, "tennis shoes, basketball shoes, gym shoes, training shoes and the like." <u>Reiter v. Sonotone Corp</u>., 442 U.S. 330, 339 (1979)("In construing a statute we are obliged to give effect, if possible, to every word Congress used"); <u>United States v. Menasche</u>, 348 U.S. 528, 538-39 (1955).  If Congress had intended the meaning urged here by the plaintiff, it would not have included the named exemplars – and surely would not have included the language "and the like" – in Note 2 and subheading 6404.19.35, HTSUS.  Instead, Congress would have provided simply for "athletic footwear other than sports footwear (as defined in subheading Note 1 above) . . .."[6]

---

[6] The plaintiff correctly points out on page 7 of its brief that

> the defined statutory phrase in issue and its "exemplars," which are found in subheading 6404.11, were not creations of Congress, but rather were part of the six-digit International Harmonized Schedule language which the United States agreed to adopt subject to the right to make changes beyond the 6 digit level as was done in this case. *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 n.1 (Fed.Cir. 1999).

Moreover, the additional note does not purport to cover all athletic footwear[7], a point that arguably finds contextual support in that the

> antecedent basis for "such athletic games or purposes" is the game or purpose for which a tennis shoe, basketball shoe, gym shoe, training shoe and the like is worn.

Id. at 17.

B

Although this court has been unable to locate legislative light on the intended practical impact of the additional U.S. note on subheading 6404.11, the changes engendered by the enactment of the HTSUS, effective January 1, 1989[8], do provide a background therefor.

(1)

Prior to harmonization, footwear was classified in accordance with the headings of U.S. Tariff Schedule 7, Part 1.  And, although "athletic footwear" does not now appear in any heading or subheading of HTSUS chapter 64, it did appear in that schedule for the year 1987, for example.  Moreover, Subpart A statistical headnote 1(a) explained that

> the term "athletic footwear" covers footwear of special construction for baseball, football, soccer, track, skating, skiing, and other athletic games, or sports[.]

---

[7] See Defendant's Brief, p. 16.

[8] See Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, §§ 1201-17, 102 Stat. 1107, 1147-65.

Unlike the harmonized system of today, however, its predecessor did not, by name, provide for "sports footwear".  Yet, the juxtaposition of that schedule's description of athletic footwear, quoted above, with the current description of sports footwear in Subheading Note 1 to chapter 64, quoted below, at least evokes some sense of continuity:

> For the purposes of subheading[] . . . 6404.11, the expression "<u>sports footwear</u>" applies only to:
>
> (a) Footwear which is designed for a sporting activity and has, or has provision for the attachment of spikes, sprigs, cleats, stops, clips, bars or the like;
>
> (b) Skating boots, ski-boots and cross-country ski footwear, snowboard boots, wrestling boots, boxing boots and cycling shoes.

In a general sense, what was once seemingly considered athletic footwear is now considered sports footwear.

(2)

Amidst such re-organization and -characterization, the HTSUS introduced "tennis shoes, basketball shoes, gym shoes, training shoes and the like".  As stated, it is plaintiff's interpretation of Additional U.S. Note 2 in connection therewith, and specifically the casual use of the term "athletic footwear", that gives it cause to end its inquiry as to the scope of its preferred subheading.  Without more convincing support that such rote substitution was the intent of Congress, however, this court cannot, and therefore does not, do the same.

C

Instead, this court opts for a more deliberate con-

struction of subheading 6404.11 in accordance with the rule of

*ejusdem generis.*[9]

> Under th[at] rule . . ., which means "of the
> same kind," where an enumeration of specific
> things is followed by a general word or
> phrase, the general word or phrase is held to
> refer to things of the same kind as those
> specified.
>
> *Sports Graphics, Inc. v. United States*, 24 F.3d 1390,
> 1392 (Fed.Cir. 1994) . . .; *see generally* 2A Norman J.
> Singer, *Statutes and Statutory Construction*, § 47.17, at
> 273 (6th ed. 2000) ("Where general words follow specific
> words in a statutory enumeration, the general words are
> construed to embrace only objects similar in nature to
> those objects enumerated by the preceding specific
> words.").

Micron Technology, Inc. v. United States, 243 F.3d 1301, 1308

(Fed.Cir. 2001).  Such construction

> requires that the imported merchandise possess the
> essential characteristics or purposes that unite the
> articles enumerated *eo nomine* in order to be classified
> under the general terms. *Nissho-Iwai Am. Corp. v. United
> States*, 10 Ct.Int'l Trade 154, 157, 641 F.Supp. 808, 810
> (1986).

Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1392 (Fed.

Cir. 1994).

---

[9] See, e.g., Economy Cover Corp. v. United States, 76 Cust.
Ct. 130, C.D. 4645, 411 F.Supp. 783 (1976).  Though the defendant
argued for the application of *ejusdem generis* in its motion
opposing trial, it has since decided that the rule "is not appli-
cable here because the statutory language, 'tennis shoes . . . and
the like,' is not in doubt, and has a plain meaning".  Defendant's
Brief in Reply, p. 11 (citation omitted).  But see Plaintiff's
Brief, p. 15.  See also HQ 081746 (Dec. 1, 1998) ("The wading boots
at issue would not be considered athletic shoes under the HTSUS as
they are not ejusdem generis to the shoes listed in Additional U.S.
Note 2 to Chapter 64").

Resorting to various dictionary definitions, the defend-
ant maintains that appearance is of paramount importance for
determining whether the subject merchandise is like the exemplars:

> Each of the exemplars listed in subheading
> 6404.11.80, HTSUS, namely tennis shoes, basketball shoes,
> gym shoes and training shoes, along with sneakers,
> jogging shoes and running shoes, as defined in general
> lexicons or the Footwear Dictionary (1994), fully enclose
> the wearer's foot to provide a secure and supportive
> enclosure that is not open at the toe, heel, top or
> sides.[10]
>
> * * *
>
> Because the sandals in issue are open at the toe,
> heel, top and sides, and do not fully enclose the
> wearer's foot, they differ from the exemplars of subhead-
> ing 6404.11.80, HTSUS.[11]

That the sandals do not resemble, at least in appearance, the
exemplars is not challenged by the plaintiff, which instead focuses
on the use thereof.  See Plaintiff's Brief, p. 10:

> Teva® sport sandals may not look like tennis shoes,
> etc., but plaintiff will demonstrate that they are used
> in place of tennis shoes, etc. for athletic purposes and
> in many instances outperform these other types of
> athletic footwear.

Furthermore:

> . . . Plaintiff will demonstrate at trial that Teva®
> sport sandals are used in athletic activities, where in
> the past wearers used tennis shoes, sneakers, etc.  For
> certain athletic activities, Teva® sport sandals are
> preferred.

Id. at 10-11.

---

[10] Defendant's Brief, pp. 12-13, citing Foley Declaration,
para. 8 and Defendant's Exhibit B.

[11] Id. at 15, citing Foley Declaration, paras. 5, 9.

> . . . The common characteristic or purpose of the named
> exemplars in the subject tariff provision is that they
> are athletic footwear and are within the same class or
> kind of merchandise, i.e., athletic footwear.

Id. at 15.

And while a likeness in either of the two categories might well satisfy the rule (in the light of its disjunctive formulation), Customs Ruling HQ 963395 (April 2, 2002) explains the significance of physical disparities in terms of their effect on use:

> . . . We find that the sandals are not . . . "like" the
> named exemplars, each of which provides, at a minimum, a
> secure and supportive enclosure for the foot.  None of
> the named exemplars is generally considered to be
> footwear that is open at the toes or the heel, while the
> sandals are open in both areas.  Unlike the sandals, none
> of the named exemplars is generally touted for use in the
> sporting activities of swimming or surfing.  Although
> many types of sandals can be, and in fact are, used in
> running, the features of open toes, heels, sides, and
> tops would appear to have significant drawbacks. Without
> the enclosure and support offered by a shoe like a
> tennis, basketball, gym, or training shoe, the foot is
> freer to slide in various directions.  Depending on
> weather, terrain, etc., the open nature of the sandals
> also permits relatively easy entry of moisture, soil,
> pebbles, twigs, etc., into spaces between the foot and
> the footwear.  While such factors may amount to mere
> nuisance, they may also require erratic changes in gait
> or occasional stops to remove foreign matter, adjust
> straps, or rest, in order to avoid injury, none of which
> is conducive to the fast footwork of a sporting
> activity.[12]

---

[12] Defendant's Exhibit E, pp. 3-4.  In T.D. 92-32 ( Tariff Classsification of Protective Footwear), 26 Cust.B.& Dec. 98 (1992), Customs declined to find that hiking/backpacking boots fit the term "tennis shoes, basketball shoes, gym shoes, training shoes and the like".  It reasoned that the boots were too heavy to qualify, noting that "[a]ll the exemplars are used in sports which require fast footwork or extensive running". 26 Cust.B.& Dec. at 112.

Such consideration is appropriate when *eo nomine* exemplars indicate use and possess an appearance that is dictated by that use. In <u>Carl Zeiss, Inc. v. United States</u>, 195 F.3d 1375, 1379 (Fed.Cir. 1999), for example, the court stated that "a use limitation should not be read into an *eo nomine* provision unless the name itself inherently suggests a type of use", citing <u>Pistorino & Co. v. United States</u>, 66 CCPA 95, C.A.D. 1227, 599 F.2d 444 (1979), and <u>United States v. Quon Quon Co</u>., 46 CCPA 70, C.A.D. 699 (1959). To quote from <u>Quon</u>,

> use is an important factor in determining classification though an eo nomine designation is involved.
>
> * * *
>
> . . . We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act.

46 CCPA at 72-73. <u>See</u> <u>also</u> <u>Myers v. United States</u>, 21 CIT 654, 660-61, 969 F.Supp. 66, 72 (1997).

To determine common meaning, "the court may consult dictionaries, lexicons, scientific authorities, and other such reliable sources". <u>Lonza, Inc. v. United States</u>, 46 F.3d 1098,

1106 (Fed.Cir. 1995), citing C.J. Tower & Sons of Buffalo, Inc. v. United States, 69 CCPA 128, 133-34, 673 F.2d 1268, 1271 (1982). The *Complete* Footwear Dictionary (Rossi ed. 1994), a lexicon used by the industry, defines "gym shoe" on page 55 as "[s]neaker-type[13] footwear used for gymnasium activities or sports". On pages 134-35, it also provides the following definitions:

> **sports shoe.**[14]  An athletic shoe designed for any particular kind of active sport. Each sport usually has its own shoe design requirements. Many sports shoes are variations of others, usually with one or more additional features to adapt to the

---

[13] Sneaker is defined therein on page 132 as "[f]ootwear with a rubber sole and upper of canvas or other materials, constructed on the vulcanized process". The term "vulcanized" therein refers to a process whereby

> a rubber tape, about $\frac{3}{4}$ inch wide and $\frac{1}{16}$ inch thick, is attached to the side or the top of the edge of the rubber outsole and over the bottom $\frac{1}{2}$ inch or so of the upper, which could be made of any material. After the curing in the vulcanizing oven, it is virtually impossible to separate the rubber components which have been joined since they have basically been fused together. In addition to being extremely strong, a rubber-to-rubber "vulcanized" joint will not be weakened by immersion in water.

Footwear Definitions, T.D. 93-88, 27 Cust.B.& Dec. 312, 322 (1993).

[14] In addition to introducing basketball and tennis shoes, "sports shoe" is also referenced as the object of a "see" signal (on page 148) where the definition of "training shoe" would otherwise be found. It is also worth noting that, according to defendant's brief, page 11, note 4, a later edition of The *Complete* Footwear Dictionary (2d ed. 2000) does indeed define training shoe on page 174 as follows:

> . . .  Also known as cross-trainer. A sports shoe similar in design and construction to a professional shoe used in a given sport, such as track or basketball, but can also be used for casual wear.

special needs of the particular sport.  Also known as an "athletic shoe."  The main types of sports shoes are as follows:

* * *

**basketball.**  The shoe may be either hightop or low-cut, with upper of canvas, nylon/canvas, or leather/canvas, laced to toe, reinforced toe tip, padded collar, cushioned insoles, or sometimes a removable orthotic insole insert. The traction sole is either rubber or polyure-thane.  Air holes are in the upper for added ventilation.

* * *

**tennis.**  Canvas or leather/nylon mesh upper with ventilation holes, upper cut a bit higher than ordinary low-cut shoe; firm counter, under-foot cushioning, padded collar and tongue, lace-to-toe, protective toe tip.  Sole design depends on playing surface (grass, clay) and can vary from moderate to high traction.[15]

Tennis shoe is also defined in Webster's Third New International Dictionary Unabridged (1981), page 2356, as

*n* **:** a light shoe worn esp. in playing tennis and gener-ally made of canvas with a rubber sole -- compare SNEAKER[.]

And although that lexicon does not define "gym shoe" *per se*, it al-so refers the reader to "SNEAKER" which it defines on page 2156 as

---

[15]  Boldface in original.  Excerpts from this dictionary have been provided by the defendant as Exhibit D.  Counsel state that the

> Footwear Dictionary (1994) has been used as a reference by the Customs' National Import Specialist on footwear and by testing laboratories in the United States, and is often cited by legal representatives of importers in administrative matters before Customs.

Defendant's Brief, p. 10 n. 3, citing Foley Declaration, para. 7.

**3:** a shoe usu. of canvas with a pliable rubber sole worn esp. for sports or hiking[.]

IV

This court cannot grant defendant's motion for summary judgment. While factual determinations by Customs are entitled to a presumption of correctness, it is a rebuttable one. See, e.g., Rollerblade, Inc. v. United States, 282 F.3d 1349, 1352 (Fed.Cir. 2002). To preclude an attempt at rebuttal herein by the plaintiff would run contrary to the foundation of disposition by summary judgment, namely, that there be "no genuine issue as to any material fact". USCIT Rule 56(c). Although Customs may prevail upon its opinion that the openness of plaintiff's sandals prevents their use in activities implied by the statutory exemplars, that is a material element of the disagreement at bar. In other words, while the reasoning in the ruling letter deserves deference, the conclusion derived therefrom is founded on a factual premise that the plaintiff does not concede -- in the absence of evidence adduced in open court.

Ergo, defendant's motion for summary judgment must be, and it hereby is, denied. Counsel are to confer and propose to the court on or before January 20, 2006 a schedule for trial.

So ordered.

Dated:  New York, New York
        December 15, 2005

                               Thomas J. Aquilino, Jr.
                                   Senior Judge