Slip Op. 07 - 136

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

DECKERS CORPORATION,                          :

                       Plaintiff, :

             v.                               : Court No. 02-00674

THE UNITED STATES,                            :

                       Defendant. :

- - - - - - - - - - - - - - - - - - - -x

<u>Opinion</u>

[Upon trial as to classification of *Teva®*
 sandals, judgment for the defendant.]


                                    Decided: September 5, 2007


     <u>Rode & Qualey</u> (<u>Patrick D. Gill</u>, <u>Michael S. O'Rourke</u> and
<u>William J. Maloney</u>) for the plaintiff.

     <u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S.
Williams</u>, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (<u>James A. Curley</u> and <u>Marcella Powell</u>); and Office of
Assistant Chief Counsel, U.S. Customs and Border Protection
(<u>Michael W. Heydrich</u>), of counsel, for the defendant.


          AQUILINO, Senior Judge:  As reported in slip opinion

05-159, 29 CIT ___, 414 F.Supp.2d 1252 (2005), filed herein,

familiarity with which is presumed, this court could not and

therefore did not grant defendant's motion for summary judgment as

to its classification of three models of *Teva®* sandals that entered

the United States through the port of Los Angeles, California.  As

stated, the genuine issue of material fact that required trial was

the opinion set forth in Customs Ruling HQ 963395 (April 2, 2002)[1]

that the openness[2] of those models leaves them unsuitable for

activities implied by the exemplars of subheading 6404.11 of the

Harmonized Tariff Schedule of the United States ("HTSUS"), namely,

"tennis shoes, basketball shoes, gym shoes, training shoes and the

like".  See 29 CIT at ___, 414 F.Supp.2d at 1262.  Thereupon trial

commenced in California and continued and concluded in New York.

I

The evidence adduced and now on the record clearly

attenuates that agency opinion but does not extend so far as to

recommend that either the *Pretty Rugged Sport Sandal*, plaintiff's

exhibit 1, the *Terradactyl Sport Sandal*, plaintiff's exhibit 2, or

the *Aquadactyl Sport Sandal*, plaintiff's exhibit 3, be donned for

tennis, basketball or gym, or even training, at least on or in the

kind of confines those first three statutory adjectives imply.

Rather, the plaintiff has proven beyond any reasonable doubt their

design and development for strenuous human outdoor activity, often

---

[1] Defendant's Exhibit E, pages 3-4, is quoted at 29 CIT at ___ and 414 F.Supp.2d at 1260.

[2] See generally Plaintiff's U.S. Patent No. 4,793,075, p. 2, FIG _ 2, 29 CIT at ___, 414 F.Supp.2d at 1256.

near or in bodies of water, including "adventure racing"[3], beach and trail running, "canyoneering"[4], hiking, jogging, mountain biking, power- and sail-boating, sport fishing[5], swimming, triathlon, and "white water" kayaking and rafting.

Volume 10, page 408 of The New Encyclopaedia Britannica (1986) dates the type of footwear by humans known as *sandals* to 2000 BC (in Egypt), but almost 4,000 years passed before one Mark

---

[3] California trial transcript ("CalTr."), p. 235. Adventure racing is "through all different natural mediums" [id. at 238],

> very much like a triathlon with a team; but the sports they go through . . . where they're climbing and then they're all of a sudden rafting and then . . . running. . . . So this type of shoe . . . is something where . . . the athlete is capable of staying in one piece of footwear, going in and out of the water, running, climbing, and rafting all . . . in one fell swoop.

Id. at 236-37.

[4] Ibid. at 99.

[5] According to unrefuted testimony at trial, there are

> many, many types of fishing, and they've all become competitive now[,] from catfish fishing in the Mississippi to . . . large sailfish fishing off the coast of Hawaii and Costa Rica; and these shoes are used for the whole gamut . . .. Fly fishermen use them . . . instead of waders in creeks that are accommodating temperaturewise. They are used on boats all over the world for competitive fishing.

Ibid. at 239. See also New York trial transcript ("NYTr.") 1, pp. 9-13, 27-29.

Thatcher designed and successfully patented the "universal" strapping system affixed to each of the *Teva*®s at bar and described as follows:

> A sandal with an elongated sole configured to the profile of a human footprint with a toe end and a heel end, employs a toe strap connected at two anchor points to grip the full part of the user's foot and a heel strap connected at two anchor points to grip the ankle of the user's foot, with a lateral strap connected between the toe strap and the heel strap, which is located on the outside sole parallel to its surface so it is operable to stabilize the other straps and to maintain essentially constant tensions in the individual straps as the sole flexes with the toe and heel straps being infinitely adjustable so the wearer can cinch the sandal to its foot by adjusting said straps in a manner that will not be dislodged during rigorous activity.[6]

Plaintiff's patent (and the trial record into which it has been read) summarizes the invention as a

> sports sandal, including an elongated sole, configured to the profile of the human foot having a toe end and a heel end, a tether-strap system connected to the top of said sole for retaining a human foot, the tether-strap system having a toe-strap system extending transversally from the sole adjacent to the toe end and a heel-strap system connected to the sole at the heel end for encircling the user's ankle, and a lateral strap connected between said toe-strap system and said heel-strap system with the lateral strap located parallel to and along the outer edge of the sole so flexing of said sole will not appreciably change the tension in said tether-strap system.[7]

---

[6] CalTr. at 38-39, quoting from plaintiff's patent.

[7] Id. at 39-40.

A

Plaintiff's merchandise was classified by Customs under HTSUS subheading 6404.19.35. Its protest thereof, and subsequent pleadings based thereon herein, have taken the position that "the most specific description" of its goods within the meaning of General Rule of Interpretation 3(a) is:

| 6404.11 | Sports footwear; tennis shoes, basketball shoes, gym shoes, training shoes and the like: |
| --- | --- |
| | *    *    * |
| | Other: |
| | *    *    * |
| 6404.11.80 | Valued over $6.50 but not over $12/pair . . . . . . . . . . |

As recited in slip opinion 05-159, the definition of "sports footwear" found in Subheading Note 1 to HTSUS chapter 64 precludes classification of plaintiff's sandals as such. See 29 CIT at ___, 414 F.Supp.2d at 1258; Pretrial Order, Schedule C, para. 5. Whereupon the plaintiff continues to press its view that the term

> "tennis shoes, basketball shoes, gym shoes, training shoes and the like" is "defined by Additional U.S. Note 2 to Chapter 64 as all 'athletic footwear' subject to certain exceptions which the parties agree do not apply to the Teva® sport sandals".[8] . . .

---

[8] 29 CIT at ___, 414 F.Supp.2d at 1257, quoting plaintiff's brief in opposition to defendant's motion for summary judgment, pp. 2-3 (emphasis in original).

> Congress eliminated the need to make subjective determinations as to whether shoes other than the named exemplars are "like" the named exemplars. It laid this issue to rest by putting the named exemplars and any shoes like them in one defining basket: "athletic footwear." Hence, there is no need to make the subjective and contentious determinations of what is "like" as suggested by defendant since Congress has defined the entire term including the exemplars and the term "and the like" as meaning athletic footwear.[9]

Upon initial analysis, the court considered this attempt to extrapolate from that additional note 2's language[10] congressional intent to substitute, for purposes of interpreting subheading 6404.11.80, "athletic footwear" for the list of exemplars and their like to be "tenuous." 29 CIT at ___, 414 F.Supp.2d at 1257.

Nonetheless, trial ensued at which the plaintiff bore its burden of proof with regard to its factual averments, *e.g.*:

2.  The imported merchandise is sold as athletic foot-wear.

3.  Merchandise in issue is used for sporting and athletic purposes including, but not limited to, whitewater rafting.

4.  The imported merchandise is sold under the registered trademark Teva® and is patented in the United States Patent Office (Patent #4,793,075), described as "SPORT SANDAL FOR ACTIVE WEAR."

5.  Teva® sport sandals are conducive to fast footwork associated with athletic activities.

---

[9] Id.

[10] See id.

6.  The imported footwear is the type commonly referred to by the footwear industry and consumers as sport sandals or athletic sandals.

7.  Sport sandals are recognized as athletic footwear by the footwear industry.

29 CIT at ___, 414 F.Supp.2d at 1255.  Also:

11.  The imported merchandise is used in athletic activities where, prior to the invention of the sports sandal, wearers had no option but to use closed upper styled tennis shoes, basketball shoes, gym shoes, training shoes and other types of athletic footwear.

12.  For certain athletic activities, the imported merchandise is preferred over any of the closed upper styled exemplars.

13.  The openness of the uppers of the imported merchandise does not create significant drawbacks to athletic use, but rather results in an improved, more usable athletic shoe.

14.  The imported footwear does not allow the wearer's foot to move or slide in a manner inconsistent with athletic use.

15.  The design of the imported merchandise allows for quick and easy removal of any foreign matter that may be introduced while participating in athletic activities.

16.  The imported merchandise is favored by users over the exemplars because the time needed to remove foreign objects or to tighten or adjust Teva® sports sandals is significantly less than the same activities performed on closed upper styled tennis shoes, basketball shoes, gym shoes or training shoes.

17.  The performance and comfort of the imported merchandise in athletic use under conditions, e.g., weather and terrain, involving moisture is superior to that of closed upper styled tennis shoes, basketball shoes, gym shoes and training shoes.

18.   The imported merchandise has features that are also found in closed upper styled tennis shoes, basketball shoes, gym shoes and training shoes.

Pretrial Order, Schedule C-1.

B

Given the evidence now on the record, plaintiff's able counsel have filed a reply to defendant's post-trial brief. Among other things, they request the court to revisit their "tenuous" conclusion, supra, to wit:

> . . . To [the] extent that . . . link is tenuous, we believe the record in this case closes the loop. Plaintiff's proof that the imported articles are athletic footwear is tantamount to proving that the imported articles are *ejusdem generis* with the named exemplars in that their primary purpose is for use in athletic games or for athletic purposes. Without Note 2, there can be no question that the issues in this case would have to be resolved solely by reference to the rule of . . . *ejusdem generis*. However, Note 2 must be given some meaning in its attempt to define the term athletic footwear. If the sole criterion to resolve this issue was resort to the rule of *ejusdem generis*, Congress would not have had to state that the term "covers athletic footwear." Nor can it be said that Note 2 was inserted solely for the purpose of modifying the principal use requirement of GRI Additional U.S. Rule of Interpretation 1(a) to the HTSUS or the elimination of "sports footwear" from the provision. If that were the case, Note 2 could have simply said that "heading 6404.11.80, HTSUS, excludes 'sports footwear' including footwear otherwise provided therein, whether or not principally used for athletic games or purposes." Instead, Congress deliberately used the entire term, "tennis shoes, basketball shoes, gym shoes, training shoes and the like" and stated that it covers athletic footwear. To ignore the defining proviso that the term covers athletic footwear would be to assume that Congress did a vain and unnecessary thing in using

> the term athletic footwear to define the entire term in subheading 6404.11.80, HTSUS, including the term "and the like."  Even if Congress could have drafted Note 2 more clearly, "the courts must not impute to a legislative body the doing of a useless and vain thing unless the written words will not permit of a construction which will give them a different effect."  *Fensterer & Voss (Inc.) v. United States*, 13 Ct.Cust.Appls 105, T.D. 39734 (1924).

Plaintiff's Reply to Defendant's Post Trial Brief, pp. 14-15.

Counsel add that, in a case of statutory interpretation, the meaning of terms is never completely free of doubt.  Id. at 15. While this certainly can be true, in this particular action there is and can be no doubt that plaintiff's goods are "sandals", as that form of human footwear has been understood for millennia. Indeed, counsel do not and have not referred to plaintiff's merchandise otherwise.  On the other hand, the form of footwear specified in that part of the HTSUS subheading, which the plaintiff prefers, is "shoe"[11].  Again, there is and can be little doubt that that term does not cover the *Teva*®s at issue.  Compare, e.g., Defendant's Exhibit B-1, -2, -3, -4 and NYTr. 2, pp. 13-23, with Plaintiff's Exhibits 1, 2, 3 and Defendant's Exhibit N.  Moreover, if plaintiff's patent 4,793,075, Exhibit 4 herein, genuinely

---

[11]   Definitions of the two forms are found in defendant's exhibit D (Rossi, The **Complete** Footwear Dictionary, pp. 117, 122 (1994)).

satisfies 35 U.S.C. §103[12], its nonobvious subject matter post-dates (Dec. 27, 1988) iteration of HTSUS subheading 6404.11 in USITC Pub. 2030, p. 64-14 (March 25, 1988).  While it may well be, as this matter has discovered, that forms of human athletic activity have engendered more-propitious types of footwear, the law governing their classification has yet to follow suit.  That it could (or even should) is, of course, beyond the authority of this court.

II

This court's jurisdiction extends only to deciding whether plaintiff's goods have been lawfully classified upon entry by Customs.  In hereby concluding that they have been, the court will enter final judgment to that effect on behalf of the defendant.

Decided:  New York, New York
          September 5, 2007


                                    /s/ Thomas J. Aquilino, Jr.
                                         Senior Judge

---

[12] Cf. KSR Int'l Co. v. Teleflex Inc., 550 U.S. ___, 127 S.Ct. 1727 (2007).

## J U D G M E N T

### UNITED STATES COURT OF INTERNATIONAL TRADE

#### Thomas J. Aquilino, Jr., Senior Judge

- - - - - - - - - - - - - - - - - - - -x

DECKERS CORPORATION,                         :

               Plaintiff, :

          v.                         :      Court No. 02-00674

THE UNITED STATES,                           :

              Defendant. :

- - - - - - - - - - - - - - - - - - - -x

This test case within the meaning of USCIT Rule 84(b) having been duly submitted for decision; and the court, after due deliberation, having rendered decisions herein; Now therefore, in conformity with said decisions, it is

ORDERED, ADJUDGED and DECREED that the decision of the United States Customs Service to classify the merchandise at issue under HTSUS subheading 6404.19.35 (1998) be, and it hereby is, affirmed; and it is further

ORDERED, ADJUDGED and DECREED that this test case be, and it hereby is, dismissed.

Dated:  New York, New York
       September 5, 2007

                       /s/ Thomas J. Aquilino, Jr.
                             Senior Judge